UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND SPORTS NETWORK, L.P. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ALLEY INTERACTIVE LLC (CT); ARIEL )<br>LEGASSA, )<br>)<br>Defendants. )<br>) | Civil Action No. 22-CV-10024 |

**PLAINTIFF'S *EX-PARTE* MOTION FOR APPROVAL OF
<u>ATTACHMENT BY TRUSTEE PROCESS</u>**

Plaintiff New England Sports Network, L.P. ("NESN") respectfully moves, pursuant to Mass. R. Civ. P. 4.2, made applicable in this Court by Fed. R. Civ. P. 64, for an order approving trustee process for the attachment of bank accounts in the amount of $575,500 of funds and credits entrusted to or deposited in the hands of Santander Bank, standing in the name of any of the Defendants and their associates identified herein. In addition to (1) the Complaint and (2) the Affidavit of Mary Breiter dated January 6, 2022, filed contemporaneously herewith, NESN states the following:

I. <u>Legal Standard for Attachment by Trustee Process.</u>

"Trustee process attachment is a [] Massachusetts device to freeze interests held by a third party but belonging to the defendant." *Micro Signal Research, Inc. v. Otus*, 417 F.3d 28, 30 n.1 (1st Cir. 2005). Further, "[u]nder trustee process, the trustee holds the tangible property or credits of the defendant for the benefit of the plaintiff." *Core Brands, LLC v. Designer Audio Video*, 2017 WL 4898321, at *2 (D. Mass. Apr. 28, 2017). Attachment by trustee process is available in this Court pursuant to Rule 64(a) of the Federal Rules of Civil Procedure. Fed. R.

Civ. P. 64(a) (providing that "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment"); *see also Commercial Printers of Connecticut, Inc. v. Letter-Men Pub. Co.*, 1988 U.S. Dist. LEXIS 3903, at *3 (D. Mass. May 5, 1988) ("[U]nder this rule [64], the Court is directed to follow the Massachusetts state procedure when considering a motion for trustee process).

Massachusetts law provides that, with certain exceptions not applicable here, '[t]rustee process may be used in accordance with the applicable rules of court in connection with the commencement of all personal actions . . . .'") (quoting M.G.L. c. 246 § 1). In Massachusetts, attachment by trustee process is governed by M.G.L. c. 223 (attachment) and c. 246 (trustee process), which are implemented by Mass. R. Civ. P. 4.1 and 4.2. *Latorraca v. Centennial Techs. Inc.*, 583 F. Supp. 2d 208, 211 (D. Mass. 2008).

Under Mass. R. Civ. P. 4.2(g), which governs the *ex-parte* trustee process, "[a]n order approving trustee process for a specific amount may be entered *ex parte* upon findings by the court that there is a reasonable likelihood that the plaintiff will recover judgment in an amount equal to or greater than the amount of the trustee process over and above any liability insurance known or reasonably believed to be available, and that either (i) the person of the defendant is not subject to the jurisdiction of the court in the action, or (ii) there is a clear danger that the defendant if notified in advance of the attachment on trustee process will withdraw the goods or credits from the hands and possession of the trustee and remove them from the state or will conceal them, or (iii) there is immediate danger that the defendant will dissipate the credits, or damage or destroy the goods to be attached on trustee process."

NESN satisfies this two-prong test.  First, NESN is likely to succeed on the merits in this matter.[1]  While "Massachusetts courts have not determined the exact evidentiary standard (e.g., clear and convincing or preponderance of the evidence) for a 'likelihood' of a certain recovery to be found," *Sheehan v. NetVersant-New England, Inc.*, 345 F. Supp. 2d 130, 132 (D. Mass. 2004) (citations omitted), "certainty of success is not required." *Latorraca*, 583 F. Supp. 2d at 211.  Under either standard, the facts established in the Breiter Affidavit confirm NESN's likelihood of success.  Second, Defendants' pattern of deception poses a clear danger that they will withdraw funds from the trustee or conceal them if given advance notice of attachment.

II.     NESN is Likely to Succeed on the Merits.

As set forth in the Affidavit of Mary Breiter filed contemporaneously herewith, NESN has a clear likelihood of success on the merits of its claims of fraud, conversion, and unfair and deceptive business practices.  *See* Affidavit of Mary Breiter in Support of Plaintiff's *Ex-Parte* Motion for Approval of Trustee Process for Attachment of Bank Accounts ("Breiter Affidavit").  In his capacity as Vice President of Digital for NESN, Defendant Ariel Legassa collected hundreds of thousands of dollars through the creation of a fraudulent shell company in Connecticut.  *See id* ¶ 18.

Email correspondence indicates that Legassa used his leadership position to leverage trust among the NESN Accounts Payable Department to convince the department to establish a separate account for the fraudulent Connecticut entity, Alley Interactive LLC ("Alley CT"), which unbeknownst to NESN was owned and controlled entirely by him.  *Id*. ¶¶ 3–5.  In furtherance of deception, Legassa intentionally created Alley CT using the exact same name as

---

[1] NESN is unaware of any liability insurance available to Defendants and reasonably believes based on the facts and circumstances of this case that no such insurance exists.

Alley Interactive LLC ("Alley NY"), a legitimate New York entity responsible for NESN's web development. *Id.* ¶ 4. Legassa ensured NESN that Alley CT was "working together" with Alley NY, stating "they plan to merge the two entities at the end of the year [2021], and they asked [him] to please create a separate account and send payment separately until then." *Id.* ¶13. Specifically, Legassa requested the Alley CT account to be designated as "4K Engineering," services for which NESN has received no benefit. *Id.* ¶ 15. NESN has no reason to believe Alley CT actually performed any services for NESN. *Id.* ¶ 20. Nonetheless, between March 3, 2021 and January 3, 2022, Legassa approved eleven invoices from Alley CT totaling $672,500, of which NESN paid $575,500. *Id.* ¶ 18.

Upon being questioned about Alley CT in a January 6, 2022 phone call, Legassa concedes statements he made to NESN's Accounts Payable department were not true, and that Alley CT had no relation to Alley NY. *Id.* ¶ 21. The collection of email correspondence, invoices, and Defendant's confession together confirm NESN's likelihood of success on the merits. The evidence demonstrates that over the course of a year, Defendants engaged in numerous acts of fraud, conversion, and unfair and deceptive business practices for personal financial gain. *Id.* These proceeds were deposited in the bank account of Defendant, which is maintained by Santander Bank, N.A.. NESN is likely to recover judgment against Defendants, including interest, costs, and attorneys' fees in an amount equal to or greater than $575,500, the amount requested in the trustee process.

### III. Defendants Pose a Clear Danger of Removing Funds.

Based on the foregoing course of conduct, if Defendants had advance notice of NESN's request for attachment by trustee process, they would withdraw funds or credits from the possession of the trustee and/or conceal or dissipate the funds to frustrate NESN's collection

rights.  Legassa has been using his Vice President position to defraud NESN for nearly a year.  *See id.*  Just this week, on January 2, 2022, Legassa sent an illegitimate invoice to NESN on behalf of Alley CT for $48,500.  *Id.* ¶ 18.  And when given the opportunity to absolve himself during the January 6, 2022 phone call, Legassa failed to do so.  *Id.* ¶¶ 18–23.  Instead, Legassa continues to hide behind the Alley CT fraudulent scheme; when asked why Alley CT shares the same name as Alley NY, Legassa claimed "Alley Interactive LLC" is a "common name."  *Id.* ¶ 22.  Defendant's recent deceptive behavior and overall lack of remorse pose a clear danger that if given advance notice, he would withdraw funds or credits from possession of the trustee or conceal or dissipate the funds to frustrate NESN's collection rights.

For these reasons, NESN respectfully requests an *ex-parte* prejudgment trustee process attachment on the bank accounts of Defendants in the amount of $575,000.

| | |
|---|---|
| Dated:   January 7, 2022<br>          Boston, Massachusetts | Respectfully submitted,<br><br>NEW ENGLAND SPORTS NETWORK, L.P.,<br><br>By its counsel:<br><br>/s/ Christopher M. Morrison<br>Christopher M. Morrison (BBO # 651335)<br>JONES DAY<br>100 High Street, 21st Floor<br>Boston, MA 02110<br>Telephone:  (617) 960-3939<br>Facsimile:  (617) 449-6999<br>cmorrison@jonesday.com |