UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

NEW ENGLAND SPORTS NETWORK, L.P.,

    Plaintiff,

  v.

ALLEY INTERACTIVE (CT), ARIEL LEGASSA, NILDA LEGASSA,

    Defendants.

Civil Action No. 22-CV-10024-ADB

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISSOLVE ATTACHMENTS**

Plaintiff New England Sports Network, L.P. ("NESN") hereby opposes Defendants Ariel and Nilda Legassa's Motion to Dissolve Attachments.[1] The affidavits submitted by Mr. and Mrs. Legassa merely report financial information, but offer no sworn statement remotely addressing the findings that supported the issuance of Attachments by Trustee Process, as required by Mass. R. Civ. P. 4.2(h) ("plaintiff shall have the burden of justifying any finding in the ex parte order which the defendant has challenged by affidavit"). More particularly, the affidavits neither challenge the findings that NESN is likely to recover judgment in an amount equal to or greater than $575,000, nor that there was a clear danger that Defendants would dissipate or conceal the funds in the account if notified in advance of the attachment. On this basis alone, the Court should deny Defendants' motion.

Moreover, there is no credible factual dispute that would undermine this Court's finding that NESN is likely to recover at least $575,000. Defendants offer only a fantastic story,

---

[1] Defendants' Motion does not (on its face) seek dissolution of Santander Account No. 3573724396, held in the name of corporate defendant Alley Interactive LLC. Santander answered on January 12, 2022, reporting only $578.12 held in that account.

<u>unsupported by any sworn statement or evidence</u>, that NESN executives orally agreed to a scheme that would have allowed Legassa to collect side payments that total more than double his regular salary for merely doing his job. Similarly, Defendants' own actions undermine their argument that NESN has not shown a clear danger that Defendants would dissipate or conceal funds if notified in advance of the attachment. Shortly after NESN commenced this action, Ariel Legassa ("Legassa" or "Mr. Legassa") transferred approximately $80,000 from his bank account into Nilda Legassa's ("Mrs. Legassa") account in order to frustrate NESN's collection efforts. Nothing in the Defendants' affidavits disputes this fact. Defendants' constitutional arguments are similarly misplaced, as Defendants have enough income and access to funds to meet their basic needs, and because their claimed constitutional protections do not apply to funds misappropriated from NESN. NESN therefore respectfully requests that the Court deny Defendants' Motion to Dissolve Attachments.

## I.     FACTUAL BACKGROUND

NESN incorporates by reference all factual allegations in its First Amended Complaint, Dkt. No. 12, and the Affidavit of Mary Breiter, Dkt. No. 3. On April 11, 2021, Defendant Ariel Legassa ("Legassa" or "Mr. Legassa") created an illegitimate entity, "Alley Interactive LLC" of Connecticut ("Alley CT"), for the purpose of defrauding NESN and improperly diverting funds from NESN to Alley CT. *Id.* at ¶¶ 15, 33, 41. In total, Legassa embezzled at least $575,000. *Id.* at ¶ 45. These allegations were later corroborated by the Federal Bureau of Investigation, as reflected in the sworn Affidavit of Brendan Donlan, filed with the Criminal Complaint that resulted in Legassa's arrest on February 2, 2022 ("Donlan Affidavit"). *United States v. Ariel Legassa*, Criminal Action No. 22-CR-10038 (D. Mass. Feb. 17, 2022).[2] As security for his

---

[2] Defendants Motion references the criminal charges brought against Mr. Legassa, and they have therefore waived any objection to the Court's consideration thereof.

bond, Mr. Legassa posted title to two cars (at least one of which, according to the FBI Affidavit, was paid for with funds embezzled from NESN) and his private airplane. Mr. Legassa was indicted by a Grand Jury on February 17, 2022. *United States v. Ariel Legassa*, Criminal Action No. 22-CR-10038 (D. Mass. Feb. 17, 2022).

Out of concern that Legassa would dissipate or conceal the stolen funds, NESN moved for an *ex parte* order of attachment by trustee process on January 7, 2022 for the bank account associated with Alley CT. Dkt. No. 2. This Court granted the motion on January 10, 2022, agreeing with NESN that there was a clear danger that Defendants, if notified in advance of the attachment, would dissipate or conceal the funds, and further finding that there is a reasonable likelihood that NESN will recover judgment in an amount equal to or greater than $575,000. Dkt. No. 7.

Upon discovering that Santander Bank attached only $578.12 in the Alley CT account—the only funds remaining of the $575,000 embezzled to the account—NESN petitioned this Court for another *ex parte* order to attach funds held in Legassa's personal account at the American Broadcast Employees Federal Credit Union ("ABEFCU"). Dkt. No. 9. This Court again agreed that there was a clear danger that Defendants would dissipate or conceal the funds and that NESN had a reasonable likelihood of recovering judgment. Dkt. No. 10. These findings were amply supported by the Breiter Affidavit, and have now been corroborated by the Donlan Affidavit, which notes that in addition to paying off his car loan and paying various credit cards with funds fraudulently obtain from NESN, Mr. Legassa wired approximately $156,000 to an account at the ABEFCU, listing himself as the beneficiary.

NESN recognized a pattern of attempts by Legassa to conceal the misappropriated funds when it learned that ABEFCU attached only $1,800 in Legassa's account—the only funds

remaining after Legassa transferred approximately $80,000 from his account to one in the name of Mrs. Legassa shortly before the Trustee Summons was served on ABEFCU. Dkt. No. 12 at ¶ 36. Following this fraudulent transfer, NESN amended its complaint to add Mrs. Legassa as a Defendant and obtained an *ex parte* order of attachment of her credit union account. Dkt. Nos. 12, 13, 14.

## II.   ARGUMENT

Defendants' motion to dissolve the attachments requires the application of Massachusetts law. *See* Fed. R. Civ. P. 64(a); *Metropolitan Property and Cas. Ins. Co. v. Boston Regional Physical Therapy, Inc.*, 550 F. Supp. 2d 199, 201-02 (D. Mass. 2008) ("Mass. R. Civ. P. 4.1(g) and the counterpart Rule 4.2(h) govern dissolution of an attachment granted ex parte."). Under Mass. R. Civ. P. 4.1, a defendant challenging an order of attachment "must first introduce evidence by affidavit sufficient to challenge any finding in the *ex parte* order." *Metropolitan Property*, 550 F. Supp. 2d at 202 (citing *Aetna Cas. and Sur. Co. v. Rodco Autobody*, 138 F.R.D. 328, 332 (D. Mass. 1991)). Only then does the burden shift to the plaintiff to justify the attachment as if it had not previously been granted. *Id.*

Defendants utterly fail to even challenge this Court's findings or the submissions on which they are based. Defendants' affidavits argue only that they need the attached funds to pay ordinary living expenses and for Mr. Legassa's defense in the criminal matter. With respect to the former argument, Defendants apparently misapprehend the attachment process. Under Rule 4.1(d), all that is attached are the funds held in the account when the Trustee Summons is served. Subsequent deposits may be attached only pursuant to Rule 4.1(f). Accordingly, Mrs. Legassa's legitimate income from and after the date of attachment is fully available to her. With respect to claim that Mr. Legassa needs to fund his criminal defense, NESN is unaware of any law, rule, or

constitutional provision that requires the Court to permit funds embezzled from a victim to be used to defend him in a criminal case; Mr. Legassa's counsel was appointed by the Court and there is no reason to think he cannot adequately defend Mr. Legassa.

Defendants' affidavits lack any evidence or sworn statement challenging any finding in this Court's *ex parte* orders. The Court should accordingly deny Defendants' motion because Defendants have failed to meet their burden of challenging any finding in the *ex parte* order by affidavit as required by Mass. R. Civ. P. 4.2(h). *Metropolitan Property*, 550 F. Supp. 2d. at 203–04 (denying motion to dissolve attachment for failing to sufficiently challenge Court's findings).

### A. Likelihood of Recovery

Massachusetts courts have not determined the exact evidentiary standard needed to determine that NESN is likely to succeed on the merits, but a certainty of success is not required. *See Sheehan v. Netversant-New England, Inc.*, 345 F. Supp. 2d 130, 132 (D. Mass. 2004); *Latorraca v. Centennial Techs. Inc.,* 583 F. Supp. 2d 208, 211 (D. Mass. 2008). If any case presented a certainty of success, however, this is it.

Legassa claims (in attorney argument not found in his affidavit) that NESN executives knew and approved of his plan to create a Connecticut entity whose name copied that of a legitimate vendor used by the business, Alley Interactive LLC of New York ("Alley NY"). Dkt. No. 26 at 4–5. Legassa similarly claims that NESN knew that its payments to Alley CT would go to Legassa for his services developing direct to consumer digital capabilities. *Id.*

Legassa asks this Court to believe that NESN's most senior executives—the CEO and CFO—verbally agreed, without any form of documentation, to a side deal with Legassa and an entity he created using the same name and corporate logo as a legitimate vendor. Legassa posits that NESN knew that the money paid to Alley CT would go to him for his services developing

direct to consumer digital capabilities. His unsworn submission does not address:

- why NESN would agree to pay him $575,000 to perform the duties for which it was already paying a generous salary in his capacity as Vice President of Digital at NESN;
- why he created a company with the exact same name as a legitimate NESN vendor;
- why he created invoices for his company by copying and altering legitimate Alley NY invoices;
- why some of those invoices sought payment for agreements and statements of work that do not exist;
- why he claimed to NESN's accounting department that Alley CT and Alley NY are separate entities working together (*see* Dkt. No. 12, Ex. C.; Donlan Aff. at ¶16.);
- why he told NESN that he needed additional time to get back-up for his company's invoices from the legitimate vendor;
- or why he told NESN and its counsel when confronted with evidence of his fraud that he had hired engineers at Alley CT to perform work at NESN.

There is no simply "significant factual dispute," and the Court should not accept Legassa's desperate attorney argument claims. *See Hayes v. CRGE Foxborough, LLC*, 167 F. Supp. 3d 229, 240 (D. Mass. 2016); *see also Jofran Sales, Inc. v. Watkins and Shepard Trucking, Inc.*, No. 16-11174-FDS, 2016 WL 3676140, at *2 (D. Mass. Jul. 7, 2016) (finding a reasonable likelihood that plaintiffs would succeed after defendants failed to submit affidavits challenging likelihood of success, and further finding a likelihood of success on the merits on the basis of the record before the court).

Defendants' motion is similarly insufficient with respect to Mrs. Legassa's involvement. Mrs. Legassa does not claim in her affidavit that she was unaware of Mr. Legassa's actions with

respect to NESN or that she did not know that he was secreting funds in her account. Defendants' explanation is that Legassa "routinely made deposits into [Mrs. Legassa's] account to help pay the bills," do nothing to explain an $80,000 transfer right after Mr. Legassa's business account was attached and right after his termination, leaving his own account virtually empty.  There is nothing "routine" in moving $80,000 from one account into another account for the purpose of paying household bills, especially after two other accounts controlled by Legassa were already attached.  Moreover, it is immaterial whether Mrs. Legassa had actual knowledge of the fraudulent transfer, particularly because she did not take the fraudulently transferred assets for value.  *See, e.g.*, Mass. Gen. L. ch. 109A § 9(b)(1) ("[J]udgment [for a fraudulent transfer] may be entered against … the first transferee of the asset[.]"); *Biogenesis Church, Inc. v. United States*, No. 16-11628, 2017 WL 5297903, at *5 (D. Mass. Nov. 13, 2017).

### B. Constitutional Arguments

Defendants posit a handful of improper Fifth and Sixth Amendment arguments claiming the attachments impede their ability to pay living expenses and legal fees for counsel of their choice.  Each of these arguments fall short.

As described above, the attachments apply only to funds present in the account when the Trustee Process was served, thereby providing Defendants access to Mrs. Legassa's monthly income to satisfy their ordinary and necessary living expenses.  Defendants are not deprived of basic resources, and because the funds remain attached pending further order of this Court, they cannot be dissipated.  The income Mrs. Legasa has earned since the Trustee Process was served, in addition to the income she will continue earning, is accessible to Defendants.

Defendants cite *United States v. Jones* to illustrate that depriving a criminal defendant of

the ability to meet living expenses implicates a defendant's Fifth Amendment rights. In that case, the Tenth Circuit offers constitutional protections to cover only the cost of "ordinary and necessary living expenses," which it specifies as "food, shelter, and the like." 160 F.3d 641, 646 (10th Cir. 1998). Mrs. Legassa's affidavit is silent about her income, but her husband claims that as a Sr. Director at ESPN/Disney with 19 years of experience, she receives $86,400 annually, an amount which appears to be net of taxes and other undisclosed deductions.

Mr. Legassa's inability to find a job in light of his reported criminal charges is not something worthy of Constitutional protection or judicial expense. Moreover, freezing a defendant' assets necessary to pay for legal representation implicates a defendant's Sixth Amendment right only when those assets are "untainted." *See Luis v. United States*, 578 U.S. 5, 5–6 (2016). The Breiter and Donlan affidavits establish that the attached funds are anything but untainted. *Luis v. United States* provides clear examples of tainted assets, "*e.g.*, loot, contraband, or property otherwise associated with the planning, implementing, or concealing of a crime." *Id.* at 6. The funds attached here were attached *specifically as a result of* being "tainted," or products of Legassa's criminal activity.

Defendants' reliance on *United States v. Monsanto* and *SEC v. FTC Capital Markets* to offer repetitive Sixth Amendment claims is misplaced. *SEC v. FTC Capital Markets* is not binding on this court and the standard set forth in *United States v. Monsanto* contradicts their argument. *See SEC v. FTC Capital Markets*, 2010 WL 2652405 (S.D.N.Y. June 2010); *United States v. Monsanto*, 491 U.S. 600 (1989). In *Monsanto*, the Court was clear: "In another decision we announce today, *Caplin & Drysdale, Chartered v. United States*, we hold that neither the Fifth nor the Sixth Amendment to the Constitution requires Congress to permit a defendant to use assets adjudged to be forfeitable to pay that defendant's legal fees. We rely on

our conclusion in that case to dispose of the similar constitutional claims raised by respondent here." *Monsanto*, 491 U.S. at 614.  The attached funds, which represent a fraction of the total funds converted by Legassa were frozen as a result of Defendants' fraud.  The Constitution does not offer protections to award proceeds of fraudulent behavior.

### III.   REQUEST TO ADVANCE TRIAL

If this Court is inclined to consider Mr. Legassa's unsworn statements as grounds for dissolving the attachment, NESN requests that its equitable claims be advanced for a trial during the second week of April (or such time thereafter as is convenient for the court) and that the Court allow expedited discovery, including but not limited to discovery of financial records held in the name of any Defendant.[3]

### IV.   CONCLUSION

For these reasons, NESN respectfully requests that the Court deny Defendants' Motion to Dissolve Attachments.

Dated: February 25, 2022

Respectfully submitted,

NEW ENGLAND SPORTS NETWORK, L.P.,

By its attorneys,

*/s/ Christopher M. Morrison*
Christopher M. Morrison (BBO # 651335)
cmorrison@jonesday.com
JONES DAY
100 High Street
21st Floor
Boston, MA  02110.1781
Telephone:   +1.617.960.3939
Facsimile:    +1.617.449.6999

---

[3] NESN's counsel is currently engaged at trial before Hon. Timothy Hillman (*Rasmussen Instruments, LLC v. DePuy Synthes Products, Inc. et al.*, Civil Action No. 20-CV-11807-TSH).  That trial is expected to last well into the week of March 7.  Counsel has nonrefundable travel scheduled for April 19-23 and April 29-May 3.

- 10 -

CERTIFICATE OF SERVICE

The undersigned certifies that, on February 25, 2022, the foregoing was filed through the Court's ECF system and will be sent electronically to the registered participants.

    /s/ *Christopher M. Morrison*
    Attorney for Defendants