**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NEW ENGLAND SPORTS NETWORK, L.P., <br><br> Plaintiff <br><br> v. <br><br> ALLEY INTERACTIVE LLC (CT), ARIEL LEGASSA, NILDA LEGASSA, <br><br> Defendants. | No. 22-CV-10024-ADB |

**MEMORANDUM IN SUPPORT OF NILDA LEGASSA'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

Nilda Legassa is an independent professional woman uninvolved in her husband's employment or business arrangements, and plaintiff makes and can make no allegations to the contrary. Plaintiff New England Sports Network, L.P. ("NESN) claims that its former employee, Ariel Legassa, Nilda's husband, defrauded it of over $575,000 and transferred some unknown amount of money, alleged only on information and belief to be at least $80,000, at some unknown date to an unspecified account in a New York Credit Union to Nilda.[1] NESN does not allege that Nilda was involved in or even aware of the alleged transfer, yet it seeks to hold her personally liable in Massachusetts apparently up to the entire amount obtained wrongfully by her husband for fraudulent transfer. The Court should dismiss the Amended Complaint against Nilda with prejudice as it does not have personal jurisdiction over her and, even if it did, NESN does not allege that Nilda participated in or was aware of her husband's alleged fraud.

---

[1] For the sake of clarity, this Motion refers to the parties by their first names.

**RELEVANT BACKGROUND[2]**

Nilda Legassa lives in Burlington, Connecticut with her husband, Ariel Legassa, and their four children. Her husband, Ariel, was employed by NESN as Vice President of Digital from September 2019 until January 2022. Dkt. 12 at ¶ 2. In January 2021, Ariel began negotiating with a New York entity, Alley Interactive LLC ("Alley NY"), for software and web development services for NESN. *Id*. at ¶ 14. NESN ultimately signed an agreement with Alley NY. *Id*. at ¶ 20.

Ariel formed a Connecticut business entity, Alley Interactive LLC ("Alley CT"), in February 2021 and he is named as the principal and a member of the entity. *Id*. at ¶¶ 15-16. Nilda is not alleged to be a principal, member, employee or in any other manner affiliated with Alley CT. Alley CT is not related to Alley NY and NESN had no contract with it. *Id*. at ¶¶ 18, 21. Ariel approved, and NESN subsequently paid, several invoices from Alley CT. *Id*. at ¶ 28. Alley CT maintained bank accounts at Santander and checks from NESN were deposited into these accounts. *Id*. at ¶ 35. NESN does not believe that it received any services from Alley CT. *Id*. at ¶ 30.

Nilda maintains an account at American Broadcast Employees Federal Credit Union ("Credit Union"), a New York credit union. *Id*. at ¶ 4. After the commencement of this action, Ariel transferred at least $80,000 to Nilda's account at the Credit Union with the intent to hinder, delay, or defraud NESN from attaching the funds by trustee process. *Id*. at ¶¶ 36, 53-54.

Nilda was not involved with Ariel's alleged fraud and has no ties to Massachusetts. She lives and works in Connecticut. She was not aware of Ariel's alleged transfer to her Credit Union account, which is not located in Massachusetts, and she did not participate in it. She has never

---

[2] For the purpose of this Motion only, Ms. Legassa accepts the allegations of the Amended Complaint.

worked for NESN and was not involved in Ariel's business or Alley CT. Nor does she conduct any business in Massachusetts.

## LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 12(b)(2), a court must dismiss a plaintiff's complaint where it determines that it does not have personal jurisdiction over the defendant. The plaintiff bears the burden to establish the court's personal jurisdiction over the defendant. *Kuan Chen v. United States Sports Academy, Inc*., 956 F.3d 45, 51 (1st Cir. 2020). When evaluating a motion to dismiss for lack of jurisdiction, the *plaintiff* can proffer evidence and the court can consider whether the evidence, if credited, supports all fact findings essential to personal jurisdiction. *Id*. at 54. It considers the plaintiff's properly documented evidence as true along with uncontradicted facts put forward by the defendant. *Id*.

Pursuant to Fed. R. Civ. P. 12(b)(6), a court must dismiss a plaintiff's complaint where it fails to state a claim upon which relief may be granted. In making this determination, a court should employ a two-pronged approach. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). First, it begins "by identifying and disregarding statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." *Id*. Second, taking non-conclusory factual allegations as true, a court must determine whether the allegations "state a plausible, not a merely conceivable, case for relief." *Id*.

## ARGUMENT

**I.     The Court does not have personal jurisdiction over Nilda Legassa**

The fraudulent transfer claim must be dismissed because the Court does not have personal jurisdiction over Nilda. To establish personal jurisdiction over Nilda, NESN must meet the requirements of the Massachusetts long-arm statute, G.L. ch. 223A, § 3, and the Due Process

Clause of the Fourteenth Amendment.[3]  *Kuan Chen*, 956 F.3d at 54.  Here, NESN alleges that Defendants Ariel Legassa and Alley CT have committed fraudulent and tortious acts in Massachusetts, solicited business, or derived substantial revenue from NESN through unfair and deceptive business practices in Massachusetts.  Dkt. 12 at ¶ 10.  These allegations are insufficient to satisfy its burden of establishing personal jurisdiction over Nilda Legassa under either the Massachusetts long-arm statute or the Fourteenth Amendment.

Nilda is not subject to the Court's jurisdiction because NESN does not allege that she took any action or transacted any business in Massachusetts.  Under the long-arm statute, a court may exercise jurisdiction over a person as to a cause of action arising out of that person's acts causing tortious injury in Massachusetts or transacting business in Massachusetts.  G.L. ch. 223A, § 3.  For jurisdiction based on tortious injury, plaintiffs must identify an act in Massachusetts from which the claim against defendant arises.  *Packs*, 2019 WL 1060972, at *5 (granting motion to dismiss against defendant where plaintiff did not identify any acts by her from which the claim against her arose).  For jurisdiction based on business transactions, courts look to whether "the transacted business was a 'but for' cause of the harm alleged in the claim."  *Cossart v. United Excel Corp.*, 804 F.3d 13,18 (1st Cir. 2015).

Here, the fraudulent transfer claim against Nilda, and the Amended Complaint as a whole, arise out of conduct allegedly committed by Ariel alone.  NESN does not allege that Nilda took any action or conducted any business in Massachusetts that was a but for cause of the conduct alleged in the Amended Complaint.  It claims that Ariel formed Alley CT, defrauded NESN, and transferred money into Nilda's account.  Dkt. 12 at ¶¶ 15-16, 28, 30, 36.  NESN's injury arises out of Ariel's alleged conduct – not out of anything Nilda did or did not do in Massachusetts.

---

[3] Nilda is not subject to general jurisdiction in Massachusetts because she is domiciled in Connecticut.  *Packs v. Bartle*, 2019 WL 1060972, at *6 n.6 (D. Mass. Mar. 6, 2019); Dkt. 12 at ¶ 7.

NESN similarly fails to establish personal jurisdiction under the Due Process Clause. The Due Process Clause requires NESN establish that (1) its claim relates to or arises out of Nilda's forum-state activities, (2) Nilda's in-state contacts demonstrate purposeful availment of the privilege of conducting activities in the forum state, and (3) the exercise of jurisdiction is reasonable. *Kuan Chen*, 956 F.3d at 59. As to reasonableness, courts consider the defendant's burden of appearing, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the judicial system's interest in obtaining the most effective resolution of the controversy, and the common interests of all sovereigns in promoting substantive social policies. *Packs*, 2019 WL 1060972, at *6.

All of these factors demonstrate that the Court does not have personal jurisdiction over Nilda. For the relatedness prong, as explained above, the claim relates to Ariel's alleged activities, not Nilda's. For the purposeful availment prong, NESN has not alleged that Nilda conducted any activities in Massachusetts. *Kuan Chen*, 956 F.3d at 61-62 ("A defendant cannot be said to have purposefully availed itself of the benefits of a forum with respect to a given plaintiff when it has neither initiated any in-forum activity involving that plaintiff nor dealt with him knowing that he was located in the forum."). Only Ariel is alleged to have fraudulently received money from NESN, a Massachusetts entity. Dkt. 12 at ¶¶ 15-16, 28, 30. Finally, the Court's exercise of personal jurisdiction would be unreasonable where Nilda, with no ties to Massachusetts, could not have reasonably expected to be haled into court here.

**II.     NESN fails to state a claim against Nilda Legassa for fraudulent transfer**

Even if the Court has personal jurisdiction over Nilda, the fraudulent transfer claim must be dismissed because NESN does not allege that Nilda made a fraudulent transfer or was aware of or participated in Ariel's alleged fraudulent transfer. NESN brings its claim under Sections 5 and

6 the Massachusetts Uniform Fraudulent Transfer Act ("UFTA"). To state a claim under Section 5 of the UFTA, a plaintiff must show (1) that it is a creditor and (2) the debtor fraudulently transferred property. G.L. ch. 109A, § 5(a). A transfer is fraudulent if the debtor acted with actual intent to hinder, delay, or defraud a creditor. *Id.* at § 5(a)(1). To determine actual intent, courts may consider a variety of factors, including whether the debtor retained control of the transferred property and whether the debtor transferred substantially all of his assets. *Id.* at § 5(b). To state a claim under Section 6 of the UFTA, a plaintiff must show (1) that it is a creditor, (2) the debtor made a transfer without receiving reasonably equivalent value in exchange, and (3) the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer. *Id.* at § 6(a).

There is no dispute that NESN cannot state a claim against Nilda for fraudulent transfer as a transferor. NESN claims Ariel transferred money to Nilda with intent to hinder, delay, or defraud NESN from attaching the funds by trustee process. Dkt. 12 at ¶ 54. In the alternative, NESN alleges Ariel transferred money to Nilda without receiving reasonably equivalent value in exchange and did not have enough assets to pay NESN, its expected creditor. *Id.* at ¶ 55. Under either theory, Nilda is not liable as a transferor. NESN does not allege that it was Nilda's creditor or that she transferred any property. It claims that Ariel – not Nilda – owed money to NESN and transferred his assets to Nilda's account to defraud NESN. *Id.* at ¶¶ 28-30, 52-55.

Nor can NESN state a claim against Nilda for fraudulent transfer as a transferee. A transferee may be personally liable to a defrauded creditor only where the transferee knowingly participates in a fraudulent transfer. For example, in *Hoult v. Hoult*, this Court explained that a plaintiff must show that a transferee "accepted the transfers of assets with knowledge of [the transferor's] fraudulent intent." 2002 WL 1009378, at *7 (D. Mass. May 13, 2002). This Court reached a similar conclusion in *Cheswell, Inc. v. Premier Homes and Land Corp*. There, the

Plaintiff had an option to purchase a property owned by Premier Homes. 319 F. Supp. 2d 135, 138 (D. Mass 2004). It claimed that Premier Homes, the transferor, granted a mortgage on the property to a savings bank in order to defraud it. Plaintiff brought a fraudulent transfer claim against the bank as transferee and alleged that it had notice of the option. *Id.* at 140. The Court found that the claim failed because there was "no evidence, either direct or indirect, that *the Bank* was acting with fraudulent intent when it received the mortgages or that *the Bank* accepted the mortgages with knowledge of such intent on Premier's part." *Id.* at 141. There was "no evidence of such conscious participation in fraud or any other indicia of fraud on the part of the Bank." *Id.*

Massachusetts courts have consistently agreed and limited liability to transferees who participated in or had knowledge of the underlying fraud. *See Townsend v. Shannon*, 2021 WL 3625384, at *1 (Mass. App. Ct. Aug. 17, 2021) (reversing dismissal of fraudulent transfer claim against wife who allegedly participated in transfer); *Greater Bos. Legal Servs. v. Haddad*, 2000 WL 1474516, at *39 (Mass. Super. Ct. June 28, 2000) (declining to hold transferee individually liable for fraudulent transfer where she did not knowingly participate); *Richman v. Leiser*, 18 Mass. App. Ct. 308, 316 n.6 (1984) (transferee can be personally liable to a defrauded creditor, at least to the proceeds remaining in her possession, where she knowingly participates in a fraudulent transfer); *Fed. Deposit Ins. Corp. v. Kefalas*, 1999 WL 1411361, at *3 (Mass. Super. Ct. Dec. 14, 1999) (transferee liable where (1) the transferor made the transfer with actual intent to defraud *and* (2) the transferee knew of the transferor's fraudulent intent when she received the transfer).

Here, NESN fails to state a claim because Nilda is an innocent transferee. NESN makes no allegations that Nilda participated in or was even aware of Ariel's allegedly fraudulently transfer. It claims that Ariel transferred money from an unspecified account to Nilda's Credit Union account. Dkt. 12 at ¶ 36. NESN does not allege that Nilda had anything to do with this

transfer or that she was even aware of it.  Nor does NESN allege that Nilda was aware of Ariel's alleged fraud during his employment with NESN or his formation of Alley CT.  Ariel is the only corporate officer for Alley CT and its mailing address is in Stamford, CT.  *Id*. at ¶ 8.  Nilda lives in Burlington, CT.  *Id*. at ¶ 7.

NESN's allegations are particularly deficient because fraud claims must be pled with particularity under Rule 9(b).  Rule 9(b) requires that a party alleging fraud state the circumstances constituting fraud with particularity. Fed. R. Civ. P. 9(b).  A plaintiff cannot plead conclusory allegations of fraud, but it must allege the "who, what, where, when, and how of the alleged fraud." *U.S. ex rel. Worsfold v. Pfizer Inc.*, 2013 WL 6195790, at *5 (D. Mass. Nov. 22, 2013).  Here, NESN pleads only: "Upon information and belief, [Ariel] fraudulently transferred at least $80,000 [to Nilda's Credit Union Account]."  Dkt. 12 at ¶ 53.  NESN does not state any facts upon which it bases this belief nor does it give any details of the transfer, such as the date of the transfer, the amount of the transfer, the account from which the transfer was made or one specific account to which the money was transferred.

Its alternative claim is similarly deficient.  NESN pleads only: "In the alternative, upon information and belief, Legassa made the transfer without receiving the reasonably equivalent value of the property in exchange and, after the transfer, Legassa did not have enough assets to pay expected creditors."  *Id*. at ¶ 55.  These conclusory allegations regarding insolvency are insufficient to state a claim.  *In re: NESV ICE, LLC et al.,* 2022 WL 586136, at *8 (Bankr. D. Mass. Feb. 25, 2022) (dismissing claim where there were "no allegations regarding solvency other than conclusory allegations tracking the elements of the claims").  On both theories of fraudulent transfer, NESN's barebones allegations are insufficient to state a claim against Nilda.

Limiting personal liability to transferees who participated in a fraudulent transfer is consistent with the UFTA. The statute "does not create new claims, nor does it contemplate placing the creditor in a more favorable position than would have existed without the transfer." *Bakwin v. Mardirosian*, 467 Mass. 631, 637 (2014). Instead, it provides a mechanism for an existing creditor to avoid transfers intended to frustrate its claims and restore a debtor's assets to pretransfer status in order to enable the creditor to reach them. There are no mandatory remedies as judgment is left to the judge's discretion. *Id.* The UFTA expressly states that principles of law and equity shall supplement its provisions. G.L. ch. 109A, § 11. As applied here, these principles dictate that the fraudulent transfer claim be dismissed against Nilda as she did not participate in and was not aware of Ariel's alleged fraud.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Ms. Legassa's Motion to Dismiss the Amended Complaint and award her any other further relief that it determines to be just and appropriate under the circumstances.

Date: February 28, 2022              Respectfully submitted,

                                      NILDA LEGASSA

                                      By her attorneys,

                                      */s/ Christina N. Lindberg*
                                      Tracy A. Miner, BBO No. 547137
                                      tminer@msdefenders.com
                                      Christina N. Lindberg, BBO No. 690443
                                      clindberg@msdefenders.com
                                      Miner Siddall LLP
                                      101 Federal Street, Suite 650
                                      Boston, MA 02110
                                      Tel.: (617) 202-5890

## **CERTIFICATE OF SERVICE**

     I, Christina N. Lindberg, hereby certify that the foregoing document was served by ECF on counsel for the Plaintiff on February 28, 2022.

                                      */s/ Christina N. Lindberg*
                                      Christina N. Lindberg