UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND SPORTS NETWORK, L.P.,<br><br>Plaintiff,<br><br>v.<br><br>ALLEY INTERACTIVE LLC (CT), ARIEL LEGASSA, NILDA LEGASSA,<br><br>Defendants. | Civil Action No. 22-CV-10024-ADB |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO NILDA LEGASSA'S MOTION TO DISMISS**

Dismissing Defendant Nilda Legassa ("Mrs. Legassa") from this case at this stage would offend principles of law, equity, and common sense. Plaintiff New England Sports Network's ("NESN") claim against Mrs. Legassa stems from her husband Ariel Legassa's ("Mr. Legassa") scheme to defraud his former employer in Massachusetts, resulting in at least $575,000 stolen from NESN. Shortly after this action was filed, Mr. Legassa deposited approximately $80,000 into Mrs. Legassa's bank account, from another account that the two hold jointly, in an attempt to hide the fruits of Legassa's fraud. Mrs. Legassa claims she was unaware of the transfer into her account and that Mr. Legassa "routinely" deposited money into her account "to help pay the bills." Aff. of Nilda Legassa at ¶ 5. This story is clearly contrived. The Legassas have identified their monthly bills as totaling only about one-eighth of the $80,000 that Legassa transferred to Mrs. Legassa' account. Aff. of Ariel Legassa at ¶ 4. The implication that Legassa transferred $80,000 to "pay the bills" for the month is an insult to the intelligence of the Court. This Court should not allow an indicted embezzler to shield stolen funds by simply transferring the money to his wife's bank account.

There is no legal or equitable basis for Mrs. Legassa to be dismissed from this case. This Court's exercise of personal jurisdiction over Mrs. Legassa satisfies both the Massachusetts long-arm statute and the Due Process Clause of the Fourteenth Amendment. Mrs. Legassa's acceptance of funds stolen from NESN in Massachusetts creates sufficient contacts for specific jurisdiction which does not offend traditional notions of fairness and equity. Further, Mrs. Legassa's claim that she was unaware of her husband's fraudulent scheme is irrelevant. Even without Mrs. Legassa's own knowledge or intent, the Massachusetts Uniform Fraudulent Transfer Act ("MUFTA") affords NESN remedies against Mrs. Legassa as a transferee. Dismissing Mrs. Legassa would run counter to the purposes of the MUFTA that seek to prevent debtors from concealing assets from the reach of their creditors. The Court should deny Mrs. Legassa's motion to dismiss.

## I. FACTUAL BACKGROUND

NESN incorporates by reference all factual allegations in its First Amended Complaint, Dkt. No. 12, and the Affidavit of Mary Breiter, Dkt. No. 3. On April 11, 2021, Ariel Legassa ("Legassa" or "Mr. Legassa") created an illegitimate entity, "Alley Interactive LLC" of Connecticut ("Alley CT"), for the purpose of defrauding NESN and improperly diverting funds from NESN to Alley CT. *Id.* at ¶¶ 15, 33, 41. In total, Legassa embezzled at least $575,000. *Id.* at ¶ 45. The Federal Bureau of Investigation later corroborated these allegations, as reflected in the sworn Affidavit of Brendan Donlan, filed with the Criminal Complaint that resulted in Legassa's arrest on February 2, 2022 ("Donlan Affidavit"). *United States v. Ariel Legassa*, Criminal Action No. 22-CR-10038 (D. Mass. Feb. 17, 2022). As security for his bond, Mr. Legassa posted title to two cars (at least one of which, according to the FBI Affidavit, was paid for with funds embezzled from NESN) and his private airplane. *Id.* at Dkt. No. 20; Donlan Aff.

at ¶ 23.  Mr. Legassa was indicted by a Grand Jury on February 17, 2022.  *United States v. Ariel Legassa*, Criminal Action No. 22-CR-10038 (D. Mass. Feb. 17, 2022).

Out of concern that Legassa would dissipate or conceal the stolen funds, NESN moved for an *ex parte* order of attachment by trustee process on January 7, 2022 for the bank account associated with Alley CT.  Dkt. No. 2.  This Court granted the motion on January 10, 2022, agreeing with NESN that there was a clear danger that the Legassas, if notified in advance of the attachment, would dissipate or conceal the funds, and further finding that there is a reasonable likelihood that NESN will recover judgment in an amount equal to or greater than $575,000.  Dkt. No. 7.

Upon discovering that Santander Bank attached only $578.12 in the Alley CT account, NESN petitioned this Court for another *ex parte* order to attach funds held in the Legassas' personal account at the American Broadcast Employees Federal Credit Union ("ABEFCU").  Dkt. No. 9.  This Court again agreed that there was a clear danger that Mr. Legassa would dissipate or conceal the funds and that NESN had a reasonable likelihood of recovering judgment.  Dkt. No. 10.  These findings were amply supported by the Breiter Affidavit, and have now been corroborated by the Donlan Affidavit, which notes that in addition to paying off his car loan and paying various credit cards with funds fraudulently obtained from NESN, Mr. Legassa wired approximately $156,000 to an account at the ABEFCU, listing himself as the beneficiary.  Donlan Aff. at ¶ 23.[1]

NESN recognized a pattern of attempts by Mr. Legassa to conceal the misappropriated funds when it learned from ABEFCU that it had attached only $1,800 in the Legassas' account, and that Mr. Legassa had transferred approximately $80,000 from that account to Mrs. Legassa's

---

[1] The FBI's investigation turned up at least one other bank account exploited by Mr. Legassa in furtherance of his crimes.

shortly before the Trustee Summons was served on ABEFCU. Dkt. No. 12 at ¶ 36. Following that fraudulent transfer, NESN amended its complaint to add Mrs. Legassa as a Defendant and obtained an *ex parte* order of attachment of her credit union account. Dkt. Nos. 12, 13, 14. Notably, however, this was not the first time that the Legassas' joint account contained some of the stolen funds—Mr. Legassa wired $60,000 from the Alley CT account into the Legassas' joint ABEFCU account on May 11, 2021. *See* Indictment at ¶ 20, *United States v. Ariel Legassa*, Criminal Action No. 22-CR-10038 (D. Mass. Feb. 17, 2022).

## II. ARGUMENT

### A. The Court Has Personal Jurisdiction Over Mrs. Legassa.

NESN has established the Court's personal jurisdiction over Mrs. Legassa via "specific" or "case-linked" jurisdiction. *Access Now, Inc. v. Otter Products, LLC* 280 F. Supp. 3d 287, 290 (D. Mass. 2017). "When a district court considers a motion to dismiss for lack of personal jurisdiction without first holding an evidentiary hearing, a *prima facie* standard governs its determination." *In re: Zofran (Ondansetron) Products Liability Litigation*, 2016 WL 2349105, at *3 (D. Mass. May 4, 2016). "In conducting a *prima facie* analysis, the court is required to take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed), construing them in the light most favorable to the plaintiff." *Id.* In addition, "facts put forward by the defendant become 'part of the mix only to the extent they are uncontradicted.'" *Access Now,* 280 F. Supp. 3d 287, 290 (D. Mass. 2017) (quoting *Adelson v. Hananel*, 510 F.3d 43, 48 (1st Cir. 2007)).[2] Specific jurisdiction exists whenever the court finds adequate contacts between the

---

[2] Put differently, "[f]or the purpose of examining the merits of such a jurisdictional proffer, [ ] the district court take[s] the facts from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts." *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016). Likewise, courts in this Circuit can consider additional documents beyond the pleadings in limited circumstances. *See, e.g., Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993); *Brennan v. Zafgen, Inc.*, 853 F.3d 606, 609–10 (1st Cir. 2017).

defendant and the forum state to satisfy the state's long-arm statute and the Due Process Clause of the Fourteenth Amendment. *Id.* at 291. Here, the Court's jurisdiction over Mrs. Legassa satisfies both the Massachusetts long-arm statute and the Constitution, and general policy considerations weigh in favor of affirming personal jurisdiction and therefore denying Mrs. Legassa's motion to dismiss.

Mrs. Legassa's contacts with Massachusetts satisfy a number of jurisdictional avenues under the Massachusetts long-arm statute. *See* Mass. Gen. Laws ch. 223A § 3. Specifically, "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth . . .; (c) causing tortious injury by an act or omission in this commonwealth; [or] (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he . . . engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered[ ] in this commonwealth." *Id.* Mrs. Legassa received tens of thousands of dollars in her personal bank account on January 10, 2022. Aff. of Ariel Legassa ¶ 9. Mr. Legassa states the money in this specific transfer was his "salary from NESN;" however, Mr. Legassa was only paid $10,204.64 in vacation pay and final earnings upon his termination. *See Id.* at ¶ 9. The thousands of dollars Mrs. Legassa received in her account, an account for which she is "the sole account holder," came from a joint account held between her and Mr. Legassa. Aff. of Nilda Legassa ¶ 3; Aff. of Ariel Legassa ¶ 9. The monetary transfer to Mrs. Legassa account was part of a series of transfers Mr. Legassa completed as a means of frustrating the Court's attachment process of the fraudulently obtained funds. Dkt. No. 12, 29. Through her acceptance of these funds, Mrs. Legassa has become involved in her husband's scheme to defraud NESN, a Massachusetts entity, thereby satisfying

the "business in the commonwealth" jurisdictional avenue under Mass. Gen. Laws ch. 223A § 3(a), "causing tortious injury" under § 3(b), or deriving "substantial revenue" under § 3(d).

Mrs. Legassa's reliance on *Cossart v. United Excel Corp.* with respect to business transactions in Mass. Gen. Laws ch. 223A § 3(a) further supports the finding of personal jurisdiction.[3] As Mrs. Legassa highlights in her motion, *Cossart* urges courts to look at whether "the transacted business was a 'but for' cause of the harm alleged in the claim." *Cossart v. United Excel Corp.*, 804 F.3d 13, 18 (1st Cir. 2015). In addition, *Cossart* emphasizes the breadth of the standard: "[w]e must construe the 'transacting any business' language of the statute in a generous manner." *Id.* (citing *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1087 (1st Cir. 1992)).[4] In *Cossart*, the court found Massachusetts had personal jurisdiction over the defendant even though "the disputed commission arose out of a contact with a California hospital, to be performed in California" simply because the defendant company tried to solicit business in Massachusetts with a Massachusetts resident. *Id.* at 18, 20. The *Cossart* court confirmed the existence of personal jurisdiction even when the solicitation of business is unsuccessful. *Id.* at 19 (Massachusetts case law "does not hold that the 'transacting business' language of Section 3(a) requires that a defendant have *successfully* solicited business in Massachusetts."). As the First Circuit directed in *Cossart*, this Court should affirm the existence of personal jurisdiction because NESN would

---

[3] Mrs. Legassa's reliance on *Packs v. Bartle* is likewise misplaced. The Court there observed that "Section 3(a)'s reference to transacting any business does not require that the defendant have engaged in commercial activity. That language is general and applies to any purposeful acts by an individual, whether personal, private, or commercial." *Packs v. Bartle*, 2019 WL 1060972, at *4 (D. Mass. Mar. 6, 2019) (internal quotations omitted).
[4] *Cossart* itself confirms the broad interpretation this Court should give to Mass. Gen. Laws ch. 223A §3(a). *Cossart*, 804 F.3d at 19. ("In *Haddad v. Taylor*, 32 Mass. App. Ct. 332 (1992), for example, the Massachusetts Appeals Court found that a non-resident defendant had transacted business within the meaning of Section 3(a) by negotiating, via telephone and the mail, a contract for the sale of land in Massachusetts while outside the Commonwealth, even though he was not the owner of the land (but instead was acting through a power of attorney) and even though no contract was actually consummated.").

have been able to collect the fraudulent funds from its former employee *but for* the transfer into Mrs. Legassa's account from the joint account she held with Mr. Legassa. Even more, these cross-state transactions between NESN, Mr. Legassa, and Mrs. Legassa were successful, and the Legassas have been able to move stolen assets around in attempts to avoid the Court's reach.

Importantly, "[w]hen a controversy is related to or 'arises out of' a defendant's contacts with the forum, the [United States Supreme] Court has said that a 'relationship among the defendant, the forum, and the litigation' is the essential foundation of *in personam* jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). Mr. Legassa made his wife's bank account central to this litigation when he transferred a significant amount of the misappropriated funds. Those funds were embezzled by Mr. Legassa *from Massachusetts*, and indisputably link Mrs. Legassa to the forum state. Therefore, there is a direct relationship between Mrs. Legassa, the Commonwealth of Massachusetts, and the litigation. Massachusetts has a significant interest in pursuing litigation over Mrs. Legassa in order to protect its citizens from fraud, and a lack of personal jurisdiction in this case would open the doors to inequity. Principles of equity demand a victim be restored to its rightful position, or compensated in full, and it is impossible to compensate NESN completely without Mrs. Legassa, the holder of a significant portion of the misappropriated funds, present before the court.[5] It would be unfair and illogical to require a fraud victim to pursue remedies outside its home state—where the fraud was committed—simply because the perpetrators attempt to fraudulently conceal the funds in a different state.

Next, the Court's specific jurisdiction over Mrs. Legassa satisfies Constitutional norms.

---

[5] Should Mrs. Legassa be dismissed from the case and permitted to keep misappropriated funds, it would violate another longstanding principle of equity: "it would be inequitable that [a wrongdoer] should make a profit out of [her] own wrong." *See Root v. Railway Co.*, 105 U.S. 189, 207 (1881).

The Due Process Clause requires an out-of-state defendant to "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). This inquiry is "flexible and fact-specific, 'written more in shades of grey than in black and white.'" *Baskin-Robbins Franchising LLC*, 825 F.3d at 35 (quoting *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir. 1999)). The First Circuit has specifically divided this constitutional analysis into three categories: "relatedness, purposeful availment, and reasonableness." *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 28 (1st Cir. 2008). Specifically, the Court assesses "(1) whether the claim directly arises out of, or relates to, the defendant's forum state activities; (2) whether the defendant's in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable; and (3) whether the exercise of jurisdiction is reasonable." *Cossart*, 804 F.3d at 20 (citing *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 65 (1st Cir. 2014)).

First, to determine relatedness, the court "must consider the contacts between the defendant[ ] and the forum state viewed through the prism of plaintiff's . . . claim." *Id.* Here, NESN attached Mrs. Legassa's bank account because Mrs. Legassa had possession of the funds in question, which had been fraudulently stolen from a Massachusetts entity operating in the Commonwealth. In addition to having possession of the fraudulently transferred funds in her own account, Mrs. Legassa also jointly held the ABEFCU account from which the funds had been transferred.

Second, with respect to purposeful availment, many courts have found out-of-state

conduct satisfactory if that conduct causes serious harm. *See Calder v. Jones*, 465 U.S. 783, 789–90 (1984).[6] "Even an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *Guidry*, 188 F.3d at 628. The purpose of transferring the funds into Mrs. Legassa's account was to specifically hide the fraudulent assets and prevent NESN from collecting the money. Not only was this harm serious, it was highly likely to follow from such deceptive behavior. The First Circuit is clear that "[t]he purposeful availment requirement ensures that the exercise of jurisdiction is essentially voluntary and foreseeable." *Knox v. MetalForming, Inc.*, 914 F.3d 685, 691 (1st Cir. 2019); *see also Burger King*, 471 U.S. 462, 474 (1985) ("[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."). Here, because Mrs. Legassa received stolen funds from Massachusetts in her own personal account, it is foreseeable that she would be haled into court in Massachusetts to litigate the issue. Exercising jurisdiction of Mrs. Legassa is not random nor unforeseeable, as she held possession of the stolen assets at issue before the Court.

Third, the reasonableness prong proves especially strong in the finding of personal jurisdiction because it is reasonable to assume that a state will have jurisdiction over those involved in fraudulent dealings within the state. As Mrs. Legassa highlighted, "the First Circuit has explained that in considering the "reasonableness" prong, courts should consider the Gestalt

---

[6] "When a nonresident defendant commits . . . an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state, including federal courts, to exercise personal adjudicative jurisdiction over the tortfeasor and the causes of actions arising from its offenses or quasi-offenses." *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 628 (5th Cir. 1999) (citing more than ten cases to support this claim).

Factors: "(1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies." *Packs*, 2019 WL 1060972, at *6. Each of the five factors should be assessed individually, and each supports the exercise of jurisdiction here.

The first factor, "the defendant's burden of appearing," provides ample support for a finding of jurisdiction. As a Connecticut resident, appearing before the Court in Massachusetts presents minimal to no burden to Mrs. Legassa, especially considering her family is accustomed to working in Massachusetts. Mrs. Legassa failed to provide evidence of any unusual burden for her to appear before the Court; therefore, this factor supports a finding of jurisdiction.

The second factor, "the forum state's interest in adjudicating the dispute," heavily weighs in favor of exercising jurisdiction. "As the Supreme Court has explained, a State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.'" *HealthEdge Software, Inc. v. Sharp Health Plan*, 2020 WL 1308205, at *6 (D. Mass. Mar. 19, 2020) (quoting *Baskin-Robbins*, 825 F.3d at 40). Here, the Commonwealth's interest in providing NESN, a Massachusetts-based entity, with a convenient forum against an employee's fraudulent wrongdoings supports the exercise of jurisdiction. Massachusetts has a significant interest in adjudicating this dispute as a means of protecting its citizens from fraudulent activities.

The third factor, "the plaintiff's interest in obtaining convenient and effective relief," also strongly favors a finding of jurisdiction, especially in light of Mr. Legassa's pattern of fraudulent transfers. "'A plaintiff's choice of forum must be accorded a degree of deference with respect to

the issue of its own convenience.'" *Id.* at 7 (quoting *Sawtelle v. Farrell*, 70 F.3d 1381, 1395 (1st Cir. 1995)). As a Massachusetts entity who suffered significant harm, NESN has a clear interest in litigating in the Commonwealth.

The fourth factor, "the judicial system's interest in obtaining the most effective resolution of the controversy," likewise favors NESN. Although typically "neutral," this factor "considers whether the Court's intervention would provide efficient or effective relief." *Id.* Here, the Legassas' repeated transfers in an attempt to escape the Court's grasp have forced the Court to act on a number of repeated motions. Keeping this adjudication in Massachusetts, where the Court is already familiar with the parties before it and has made preliminary rulings, is more efficient and effective than forcing NESN to bring this action in another jurisdiction.

Fifth, "the common interests of all sovereigns in promoting substantive social policies" weighs towards the exercise of personal jurisdiction. When analyzing this fifth factor, *HealthEdge* highlights the fact that "Massachusetts has an interest in protecting its citizens from out-of-state [defendants] . . . as well as affording its citizens a convenient forum in which to bring their claim." *Id.* Here, Mr. Legassa stole more than half a million dollars from an entity within the forum state, a significant portion of which was transferred to Mrs. Legassa's bank account. A strong common interest exists for a forum state to preside over out-of-state persons involved in fraudulent transfers. Moreover, a lack of jurisdiction here would encourage transferring assets outside of state as a means of hiding stolen assets. It is unreasonable to assume that a person can evade a court's reach simply by relocating stolen assets across state lines. Overall, the Gestalt factors weigh heavily in favor of exercising personal jurisdiction over Mrs. Legassa.

When "faced with a motion to dismiss for lack of personal jurisdiction, a district court

may choose from among several methods for determining whether the plaintiff has met his burden." *Baskin-Robbins Franchising LLC*, 825 F.3d at 34. Personal jurisdiction here would not offend "traditional notions of fair play and substantial justice" because Mrs. Legassa was the recipient *and* joint holder of stolen funds from an entity in Massachusetts. It is not only fair and reasonable, but also predictable that a forum state would preside over an out-of-state defendant when the harm originated in the state and continues to injure in-state citizens. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (a primary purpose of employing a Constitutional jurisdictional limit is to provide defendants with "a degree of predictability"). The Court's exercise of personal jurisdiction over Mrs. Legassa satisfies both the Massachusetts long-arm statute and the Due Process Clause.

Moreover, at a minimum, Mrs. Legassa's motion to dismiss should be denied because Mrs. Legassa is a "relief defendant" who "may be added to an action so that the plaintiff may obtain equitable relief that serves to disgorge the relief defendants of funds transferred to them for an improper purpose." *Bakwin v. Mardirosian*, 467 Mass. 631, 632 n.2 (2014). "Relief defendant" is a term "used to refer to innocent persons who have received ill-gotten funds and have no legitimate claim to those funds." *Id.* (internal quotations omitted). Access to Mrs. Legassa's account is crucial because Mr. Legassa transferred approximately $80,000 of stolen funds into the account as part of his patterned attempts to conceal the misappropriate funds. Dkt. No. 12. Granting Mrs. Legassa's motion to dismiss would hinder the opportunity for complete equitable relief and provide the means for unjustly enriching the Legassas if they are allowed to spend the stolen funds. As such, the Court should deny Mrs. Legassa's motion to dismiss.

If there were any doubt, however, the Court should take no action on Mrs. Legassa's Rule 12(b)(2) motion without first holding an evidentiary hearing. *See Kuan Chen v. United States*

*Sports Academy, Inc.*, 956 F.3d 45, 51 (1st Cir. 2020) (acknowledging that a district court "may choose from among several methods" in determining whether a plaintiff has established personal jurisdiction). To the extent the Court is unconvinced by the pleadings, the Court should exercise its power to hold an evidentiary hearing on the issue of personal jurisdiction.

### B. NESN Sufficiently Pled Its Fraudulent Transfer Claim Against Mrs. Legassa.

Mrs. Legassa's alternative basis for dismissal fares no better. In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts must accept all well-pleaded facts as true, view those facts in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Gilbert v. City of Chicopee*, 915 F.3d 74, 80 (1st Cir. 2019). To survive a motion to dismiss under Rule 12(b)(6), the complaint must only give the defendant fair notice of what the claim is, and it must contain "sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Id.* at 80 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted)). The plausibility determination is a "'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 44 (quoting *Iqbal*, 556 U.S. at 678). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 103 (1st Cir. 2013) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 14 (1st Cir. 2011)).

As an initial matter, NESN does not need to allege specific knowledge or intent by Mrs. Legassa at this point in the proceeding. Rule 9(b) specifically allows that, in alleging fraud, a plaintiff need only allege intent or knowledge generally. *See Foisie v. Worcester Polytechnic Institute*, 967 F.3d 27, 51 (1st Cir. 2020) (citing Fed. R. Civ. P. 9(b)) (quoting *Rodi v. Southern New England School of Law*, 389 F.3d 5, 15 (1st Cir. 2004)). "[F]raudulent intent is notoriously

difficult to prove, and the party pleading fraudulent intent is customarily permitted to rely on certain badges of fraud to fortify her case." *Foisie*, 967 F.3d at 51 (citing *In re Sharp Intern Corp.*, 403 F.3d 43 (2d Cir. 2005)). As in *Foisie*, several of the badges of fraud mentioned in the MUFTA are present here. *See id.*; Mass. Gen. Laws ch. 109A, § 5(b). Mr. Legassa concealed assets he had embezzled from NESN by making a transfer to his wife, and made the transfer *after* he had been terminated and sued by NESN. Nor is there any evidence that adequate consideration was given for the transfer. And like in *Foisie*, here there is no "innocent explanation" for Mr. Legassa's transfer. *See Foisie*, 967 F.3d at 52. In *Foisie*, the First Circuit held that the UFTA claims against Worcester Polytechnic Institute—the recipient of a fraudulent transferor's charitable gifts—were adequately pled, where the plaintiff alleged averments of fraudulent intent by the transferor generally. This Court should apply similar reasoning here.

Moreover, it cannot be the case that when an employee embezzles hundreds of thousands of dollars and transfers the stolen funds to different out-of-state bank accounts to conceal the funds, the recipients of those fraudulent transfers are shielded from the reach of the state's UFTA. Such a result is at odds with common sense and with the purpose of the UFTA. The MUFTA provides a range of available remedies to effectuate the purposes of the Act. Mass. Gen. Laws ch. 109A §§ 8, 12. "The purpose of the UFCA is to preserve a debtor's assets so that creditors may look to them in the event that the debtor ceases payments[.]" *First Fed. Sav. & Loan Ass'n of Galion, Ohio v. Napolean*, 701 N.E.2d 350, 354–55 (Mass. 1998); *see also Cheswell, Inc. v. Premier Homes and Land Corp.*, 319 F. Supp. 2d 135, 138–39 (D. Mass. 2004) (noting that the UFCA was the MUFTA's predecessor and that "the UFTA generally follows the same structure and organization as the UFCA"). A debtor "may not give [his assets] away and thereby put them beyond the reach of creditors." *First Fed. Sav. & Loan Ass'n.*, 710 N.E.2d at

355.

Here, Ariel Legassa deliberately sought to frustrate NESN's collection efforts by transferring the stolen funds into his wife's account—the exact sort of transaction that the MUFTA prohibits. Trial courts are given broad discretion under the MUFTA and empowered to fashion remedies appropriate to effectuate the purposes of the Act. *See, e.g.,* Mass. Gen. Laws ch. 109A § 8; *Bakwin v. Mardirosian*, 6 N.E.3d 1078, 1084–85 (Mass. 2014). This Court should not dismiss Mrs. Legassa from the action, as the Court has the power to fashion appropriate remedies against her under the MFUTA to protect NESN's interests.

The plain text of the MUFTA provides plaintiffs with a remedy against transferees, such as Mrs. Legassa here. Section 8(a)(2) states that a creditor may obtain an attachment against the asset transferred or other property of the transferee in accordance with the relevant provisions under Massachusetts law to obtain an attachment by trustee process. Mass. Gen. Laws ch. 109A § 8(a)(2). Indeed, this Court has issued an attachment pursuant to such rules. *See* Dkt. No. 14. Section 9 of the MUFTA provides an additional avenue for relief against Mrs. Legassa. In relevant part, Section 9(b)(1) provides that, to the extent a transfer is voidable under the MUFTA, a plaintiff may recover judgment for the value of the asset transferred against the first transferee of the asset. Mass. Gen. Laws ch. 109A § 9(b)(1). Section 9(b)(2) further provides that a plaintiff may recover against a subsequent transferee, other than one that took in good faith and for reasonably equivalent value. Mass. Gen. Laws ch. 109A § 9(b)(2).

Mrs. Legassa is subject to the MUFTA's reach under either provision. Ariel Legassa regularly withdrew money from the Alley CT corporate account to satisfy his own debts and spending; however, the approximately $80,000 transfer to Mrs. Legassa's bank account shortly after NESN initiated this action shows a clear intent to frustrate NESN's collection efforts.

Viewed in that light, the transfer from the Legassas' joint account to Mrs. Legassa's account renders her the first transferee, subject to the MUFTA under Section 9(b)(1). In the alternative, if the Court views Mrs. Legassa as a subsequent transferee—even if she took the $80,000 transfer in good faith—there is no dispute that she did not give reasonably equivalent value. Mrs. Legassa is therefore squarely within the MUFTA's reach.

Further, the Supreme Judicial Court ("SJC") has foreclosed Mrs. Legassa's argument. In *Bakwin v. Madirosian*, the SJC held that an innocent transferee may be added as a "relief defendant" in UFTA actions, and it further affirmed a reconveyance order issued by the trial court against a good-faith transferee who took from a transferor that had the requisite fraudulent intent. 6 N.E.3d 1078, 1083–85 (Mass. 2014). A "relief defendant" is a term "used to refer to 'innocent persons' who have received 'ill-gotten funds' and have no legitimate claim to those funds." *Id.* at 1081 n. 2 (quoting *Securities & Exch. Comm'n v. Cavanagh*, 155 F.3d 129, 136 (2d Cir.1998)). The SJC held that, even though the MUFTA permits money judgments against fraudulent transferees, the trial court did not abuse the broad discretion afforded to it under the MUFTA by ordering equitable relief against a transferee—an "'innocent' non-debtor spouse." *Id.* 1087–89.

Even assuming Mrs. Legassa had no knowledge of Mr. Legassa's scheme to defraud NESN—itself a tenuous assumption given the unusually large transfer of $80,000 into her account—*Bakwin* still makes clear that NESN can properly maintain an action against Mrs. Legassa as a relief defendant. If this Court accepts Mrs. Legassa's story that she had no knowledge of her husband's illegal activities, and that she had no knowledge that the fraudulent transfer into her account, Mrs. Legassa is nevertheless subject to the MUFTA. The Court should accordingly deny Mrs. Legassa's motion to dismiss. *See also Foisie v. Worcester Polytechnic*

*Institute*, 967 F.3d. 27, 51–52 (1st Cir. 2020) (reversing a district court's decision to dismiss MUFTA claims against a non-debtor transferee, and further analyzing the relative importance of the transferor's intent with respect to transferee liability at the pleadings stage).

The cases on which Mrs. Legassa relies are easily distinguishable. Mrs. Legassa primarily relies upon *Cheswell, Inc. v. Premier Homes and Land Corp.*—a case so factually dissimilar that it should carry little persuasive weight. 319 F. Supp. 2d 135 (D. Mass. 2004). The *Cheswell* court contemplated how the plaintiff could maintain an action against a bank who merely took a mortgage from a fraudulent transferor. *Id.* at 138. Here, Mrs. Legassa is the fraudulent transferor's wife—she is not a disconnected third party acting in the ordinary course, such as the bank in *Cheswell*. *Cf. id.* at 141–42. Similarly, Mrs. Legassa here did not provide reasonably equivalent value for the transfer, unlike the bank-transferee in *Cheswell*, where the court there acknowledged that the plaintiff did not allege any facts that would show that the bank acted outside the ordinary course or did not receive reasonably equivalent value. *Id.*

The remaining cases relied upon by Mrs. Legassa are similarly unpersuasive. In *Townsend v. Shannon*, the court's reversal of the fraudulent transfer claim did not concern the defendant-wife's participation in the transfer; rather, it concerned whether the plaintiffs had a claim at the time of transfer. *See* 2021 WL 3625384, at *2 (Mass. App. Ct. Aug. 17, 2021). Mrs. Legassa also cannot turn a "blind eye" to her husband's criminal litigation, nor can she claim that she was unaware of money held for her benefit, as was the case in *Greater Boston Legal Services v. Haddad*. 2000 WL 1474516, at *33-35, *39 (Mass. Super. Ct. Jun. 28, 2000). In *Greater Boston Legal Services*, the transferor had transferred properties to a trust in his wife's name, which it was unclear whether she knew about; here, the stolen funds were transferred from a bank account held jointly by Mrs. Legassa directly into Mrs. Legassa's personal bank account.

Mrs. Legassa's reliance on *Richman v. Leiser* is similarly misplaced. 465 N.E.2d 796, 600, n.6 (Mass. 1984). The *Richman* court does not state that the transferee's knowing participation is required to bring a fraudulent transfer claim; it merely holds that judgment could not be entered against the transferee in excess of the value of the assets which she knowingly assisted the debtors in fraudulently placing beyond creditors' reach. *Id.* at 800–01. Lastly, *Fed. Deposit Ins. Corp. v. Kefalas* is inapposite, as that case concerned a provision in the MUFTA's predecessor, the UFCA, that specifically required a fraudulent intent to maintain a claim under that provision, unlike what is required under the MUFTA to maintain a claim against Mrs. Legassa, as discussed above. 1999 WL 1411361, at *1–3 (Mass. Super. Ct. Dec. 14, 1999) (explaining that a claim under § 7 of the UFCA requires actual intent and that the spouse-transferee in the case was a "participant" in the spouse-transferor's fraud).

Finally, NESN has satisfied its pleading requirements under Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). While the First Circuit has not conclusively decided whether Rule 9(b) applies in full force to fraudulent transfer claims under the MUFTA, it has stated that Rule 9(b) "would require only that a plaintiff specify in sufficient detail the who, what, where, and when of the challenged transfers." *Foisie*, 967 F.3d at 50 ("[T]he rule does not obligate [a plaintiff] to allege every conceivable detail incident to the fraud."). In its First Amended Complaint, NESN pleaded that: (1) Ariel Legassa made certain fraudulent transfers to Nilda Legassa; (2) amounting to at least $80,000; (3) from his ABEFCU account to her ABEFCU account; (4) shortly after NESN initiated this action. Dkt. No 12 at ¶ 36. NESN has pleaded the necessary who, what, where, and when of the fraudulent transfer at issue, and it has therefore satisfied its pleading requirements under Rule 9(b).

## III. CONCLUSION

For the foregoing reasons, NESN respectfully requests that the Court set an evidentiary hearing on Mrs. Legassa's Motion to Dismiss under Fed. R. Civ. P. 12(b)(2) and deny Mrs. Legassa's Motion to Dismiss under 12(b)(6).

                                                Respectfully submitted,

                                                NEW ENGLAND SPORTS NETWORK, L.P.,

                                                By its attorneys,

Dated: March 14, 2022                               */s/ Christopher M. Morrison*
                                                  Christopher M. Morrison (BBO # 651335)
                                                  cmorrison@jonesday.com
                                                  JONES DAY
                                                  100 High Street
                                                  21st Floor
                                                  Boston, MA  02110.1781
                                                  Telephone:   +1.617.960.3939
                                                  Facsimile:    +1.617.449.6999

CERTIFICATE OF SERVICE

The undersigned certifies that, on March 14, 2022, the foregoing was filed through the Court's ECF system and will be sent electronically to the registered participants.

                                                /s/ *Christopher M. Morrison*
                                                Attorney for Defendants