UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NEW ENGLAND SPORTS | ) | |
| NETWORK, L.P., | ) | |
|     Plaintiff | ) | |
| | ) | |
|     v. | ) | Criminal No.   22-CV-10024-ADB |
| | ) | |
| ALLEY INTERACTIVE LLC (CT) | ) | |
| NILDA LEGASSA, | ) | |
|     Defendants and | ) | |
| ARIEL LEGASSA, | ) | |
|     Defendant and Plaintiff | ) | |
|     in Counterclaim | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| NEW ENGLAND SPORTS | ) | |
| NETWORK, L.P., | ) | |
| SEAN McGRAIL, and | ) | |
| RAY GUILBAULT | ) | |
|     Defendants in | ) | |
|     Counterclaim | ) | |

**Response to Counterclaim Defendants' Motion To Dismiss Defendant
Ariel Legassa's Counterclaims and Special Motion To Dismiss Defendant
Legassa's Abuse Of Process Counterclaim Under M.G.L. c. 231 § 59H**

Defendant and Counterclaim Plaintiff Ariel Legassa ("Legassa") hereby responds to the

Counterclaim Defendants' Motion To Dismiss Defendant Ariel Legassa's Counterclaims and

Special Motion To Dismiss Defendant Legassa's Abuse Of Process Counterclaim Under M.G.L.

c. 231 § 59H (the "Motion to Dismiss"). For the reasons set forth below, Legassa's counterclaims

are adequately pleaded and the court should deny the Motion to Dismiss.

**Argument**

**1.    Legal Standard**

The court should not dismiss the counterclaims because Legassa has adequately pleaded plausible claims. *See García-Catalan v. United States*, 734 F.3d 100, 101 (1st Cir. 2013) (the "plausibility standard has become the 'new normal' in federal civil practice") (citation omitted) *See also Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) ("[t]his Court determines, in considering a motion to dismiss under Fed. R Civ. P. 12(b)6) whether the facts alleged 'plausibly narrate a claim for relief'") (citation omitted).

The burden of pleading a plausible claim is "minimal." *See Dyer v. East Coast Diners, LLC*, 33 F. Supp. 3d 82, 87 (D. Mass. 2014) (denying motion to dismiss Title VII and c. 151B claims, noting that "the pleading requirements under Fed. R. Civ. P. are minimal"). A plausible claim may not be dismissed "even if seemingly incredible." *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010) (vacating dismissal of complaint holding "[w]e think that the district court demanded more than plausibility").

A complaint is plausible if it is not speculative. It need only "include facts sufficient to 'raise a right to relief above the speculative level.'" *Clorite v. Somerset Access Television, Inc.*, Civil Action No. 14-10399-DJC, at *2 (D. Mass. Dec. 9, 2014), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Twombly*, 550 U.S. at 570 (a plausible claim requires only enough facts to 'nudge[] [a plaintiff's] claims across the line from conceivable to plausible"); *Garcia-Catalan*, 734 F.3d at 103 ("determining whether a complaint crosses the plausibility threshold … does not demand 'a high degree of factual specificity'") (citation omitted).

A non-speculative claim cannot be dismissed even if the pleaded facts are "improbable." *Twombly*, 550 U.S. at 556 ("of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely'") (citation omitted). *See also Soni v. Wespiser*, 239 F. Supp. 3d 373, 381 (D. Mass. 2017) (same); *Clorite*, *supra* at *2 (non-speculative complaint survives "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)'") (parenthesis in original).

A complaint is plausible and survives a motion to dismiss even if it does not establish a *prima facie* case. *Id. See also Posada v. ACP Facility Servs., Inc.*, 389 F. Supp. 3d 149, 159 (D. Mass. 2019) ("[n]or is [plaintiff] required to establish every element of the *prima facie* case at this stage. … Further facts in support of her claims of discrimination may be developed later through discovery") (citation omitted); *Rodríguez-Vives v. P.R. Firefighters Corps of P.R.*, 743 F.3d 278, 286 (1st Cir. 2014) ("w]e emphasize that this case is on appeal of a 12(b)(6) motion, not a motion for summary judgment … [plaintiff] need not plead facts sufficient to establish a *prima facie* case"). That is particularly true in an employment discrimination case: "[a]t this stage, the requirements for adequately pleading the discriminatory motivation element are modest. … 'Smoking gun' proof of discrimination is rarely available, especially at the pleading stage." *Soni*, 239 F. Supp. 3d at 385 (denying motion to dismiss MGL c. 151B claim).

A complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," sufficient to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 544, quoting Fed. R. Civ. P. 8(a)(2) (other citation omitted). A viable employment discrimination claim requires no more than that. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002), *overruled in part on other grounds*

*by Bell Atlantic*, 550 U.S. at 569-570 (the Rules of Civil Procedure "do not contain a heightened pleading standard for employment discrimination cases"). *See also Rodriguez–Reyes v. Molina–Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013) (vacating dismissal of employment discrimination claim noting that *Swierkiewicz* remains good law and "there is no need to set forth a detailed evidentiary proffer in a complaint."); *Edsall v. Assumption College*, 367 F.Supp.2d 72, 76 (D.Mass. 2005) ("a complaint alleging discrimination under Title VII need not include specific facts establishing a *prima facie* case, but 'instead must contain no more than "a short a plain statement of the claim showing that the pleader is entitled to relief"'") (citations omitted).

Making it even easier to establish plausibility, the court must assume "the pleaded facts to be true" and those facts must be "read in plaintiff's favor." *Sepúlveda-Villarini, supra. See also Twombly*, 550 U.S. at 556 ("Asking for plausible grounds" to support a claim "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]"). *See also Posada*, 389 F. Supp. 3d at 159 (denying motion to dismiss employment discrimination complaint alleging "few details of how [plaintiff] was threatened or harassed" in the workplace holding that "the Court need not assume at the pleading stage that the complaint lays out a fixed set of facts in support of her claims of discrimination") (citation omitted).

## 2.    Count One Pleads a Plausible Claim For Wrongful Termination

The Counterclaim specifically pleads that the counterclaim defendants, New England Sports Network, L.P. ("NESN"), Sean McGrail, its CEO ("McGrail") and Ray Guilbault, its CFO/COO ("Guilbault") (collectively the "Counterclaim Defendants) acted in concert to wrongfully terminate Legassa in violation of public policy and in bad faith, with the intent to

benefit financially at Legassa's expense and to deprive him of financial rewards that he had earned and would earn. *See* Counterclaim at ¶¶ 34, 50. The Counterclaim sets forth adequate facts in support of that claim. *Id.* at ¶¶ 8-37. It asserts a plausible employment discrimination claim that the court should not dismiss.

Count One survives a motion to dismiss even though Legassa was an employee at will. Under applicable Massachusetts law, "an employer may not in every instance terminate without liability an employment contract which is terminable at will." *Siles v. Travenol Laboratories, Inc.*, 13 Mass. App. Ct. 354, 358 (Mass. App. Ct. 1982). An employment at will contract "contains an implied covenant of good faith and fair dealing, and a termination not made in good faith constitutes a breach of the contract." *Fortune* v. *National Cash Register Co.*, 373 Mass 96, 101 (1977). In *Fortune*, the Supreme Judicial Court recognized that this rule has been applied to "prevent overreaching by employers and the forfeiture by employees of benefits almost earned by the rendering of substantial services." *Id.* at 105. (citation omitted). The court held that an employer who fires an employee at will who is "on the brink of successfully completing the sale" and earning a commission, the employer "has acted in bad faith" and the employee is entitled to a sales commission. *Id.* at 104-05.

In *Gram v. Liberty Mutual Insurance* the SJC noted that it had "recognized a right of recovery for the bad faith termination of a business relationship which involved overreaching by one party seeking to deny the reasonable expectations of the other party to a financial benefit of that relationship." *Gram v. Liberty Mutual Insurance*, 384 Mass. 659, 665-66 (Mass. 1981) ("We think that the obligation of good faith and fair dealing imposed on an employer requires that the

employer be liable for the loss of compensation that is so clearly related to an employee's past service, when the employee is discharged without good cause").

In *Cataldo v. Zuckerman*, the Massachusetts Appeals Court held that an employee at will terminated before he could receive equity interests that had not yet vested in development projects he had originated could bring a claim where his termination deprived him of the equity interests. *Cataldo v. Zuckerman*, 20 Mass. App. Ct. 731 (Mass. App. Ct. 1985). The court noted that the *Fortune* doctrine "thus far has been applied principally to discharges in bad faith of an employee serving at will with the purpose of depriving that employee of *already earned* commissions, compensation, or other benefits, essentially based on past services." *Id*. at 739 (citations omitted) (emphasis in original). The court nevertheless concluded that "when Cataldo was discharged, the *possibility* that Cataldo would gain *later* a vested share of the developer's equity in each BUA project then viable was sufficiently an "identifiable, future benefit . . . reflective of past service … and specifically related to such past services performed by Cataldo, to come within the principle of the *Fortune* case." *Id*. at 741 (citations omitted) (emphasis supplied).

The Counterclaim here pleads a viable claim for wrongful termination under the *Fortune* doctrine as extended by *Cataldo*. Legassa specifically alleges that the Counterclaim Defendants terminated him in bad faith. *See* Counterclaim at ¶¶ 34 and 50. The Counterclaim supports the bad faith allegation with non-conclusory, factual allegations all of which must be taken as true for purposes of deciding the Motion to Dismiss. Legassa was not fired for defrauding NESN into making payments to an Alley Interactive CT bank account that, unbeknowst to the Counterclaim Defendants, Legassa had secretly set up and controlled. The Counterclaim Defendants knew of

and approved the entirety of that arrangement with Legassa. *Id*. at ¶¶ 25-29, 35. The

Counterclaim sets forth additional facts describing why the Counterclaim Defendants approved

the payment arrangement with Legassa - it would not have been possible to launch DTC on a

Spring 2022 timetable without the arrangement. *Id*. at ¶¶ 20-24.

The Counterclaim plausibly alleges that Legassa was fired in bad faith, and contrary to

public policy, for the purposes of depriving him of an identifiable, future financial benefit

reflective of his efforts to develop DTC streaming capability, and of benefitting financially at

Legassa's expense. *Id*. at ¶¶ 34, 36-37, and 48-51. Given the enormous potential value of a white

label DTC technology that NESN could not only use itself, but could license to every other

regional sports network or professional team to reach consumers directly, Legassa reasonably

believed that as the driving force behind the technology, he would receive a direct financial

benefit. *Id*. at ¶¶ 30-33. Instead, on the brink of an anticipated Spring 2022 launch of NESN's

DTC technology, Legassa was terminated in bad faith, contrary to public policy, and with the

intent to deny his reasonable expectations of the full financial benefit of his employment

relationship.

### 3.      Counts Two and Three Plead Plausible Claims For Employment Discrimination

#### A.      McGrail and Guilbault Are Individually Liable

Counterclaim Defendants McGrail and Guilbault seek dismissal of the Title VII claims in

Counts Two and Three, alleging employment discrimination in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000(e) and M.G.L. c. 151B, because Title VII does not permit

actions against individuals. Memorandum in Support of Motion To Dismiss at 5. Legassa

acknowledges that the court is bound by the First Circuit Court of Appeals decision in *Fantini v. Salem State College*, 557 F.3d 22 (1st Cir. 2009) holding that there is no individual employee liability under Title VII. That case (and cases from other circuits holding the same) are wrongly decided. A finding that individuals cannot be held accountable under Title VII "denies the plain meaning of Section 2000e(b): that both employers, as entities, and their agents, as individuals, are to be bound by Title VII's dictates." *Ruffino v. State Street Bank and Trust*, 908 F. Supp. 1019, 1048 (D. Mass. 1995) (Gertner, J.) (footnote omitted). For those reasons, Legassa objects to the dismissal of the Title VII claims in Counts Two and Three.

Counts Two and Three include state-law claims based on M.G.L. c. 151B, which does impose individual liability. *See Soni*, 239 F. Supp. 3d at 385 ("Chapter 151B allows for recovery against individual defendants found liable for discrimination under the statute"). *See also Martin v. Irwin Indus. Tool Co.*, 862 F. Supp. 2d 37, 38 (D. Mass. 2012); *Beaupre v. Smith Associates*, 50 Mass. App. Ct. 480, 491 (Mass. App. Ct. 2000). Those claims are valid.

###### B.    Counts Two and Three Should Not Be Dismissed For Failure To Exhaust Administrative Remedies

The Counterclaim Defendants seek dismissal of Counts Two and Three for failing to exhaust administrative remedies. They assert that Counts Two and Three are not compulsory counterclaims that must be asserted at this stage of the litigation, but rather are permissive counterclaims that may be asserted later, after the exhaustion of administrative remedies.

Rather than take the chance that the Counts Two and Three could be considered compulsory and lost if not pleaded now, Legassa chose to file them here while presenting them to the appropriate administrative agencies. Legassa electronically filed an administrative claim

on March 21, 2022 with the Massachusetts Commission Against Discrimination ("MCAD"). The Counterclaim Defendants have been notified by the MCAD, have appeared through counsel, and have moved for a continuance to make their initial filing. Legassa also filed by certified mail on March 22, 2022 a complaint with the Equal Employment Opportunity Commission ("EEOC") and promptly served the Counterclaim Defendants. Both administrative complaints are based on all of the allegations in the Counterclaim.

Legassa intends to withdraw the MCAD complaint within 90 days of filing or sooner and to pursue relief here on the c.151B claims in Counts Two and Three. He also intends to pursue relief here on the Title VII claims in Counts Two and Three upon receipt of a right to sue letter from the EEOC, which is available upon request 180 days after filing or sooner.

The administrative exhaustion requirement is not a jurisdictional bar. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("[w]e hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling. The structure of Title VII, the congressional policy underlying it, and the reasoning of our cases all lead to this conclusion"). Rather than dismissing Counts Two and Three and requiring Legassa to refile weeks or months from now, the court should consider staying the discrimination claims only until the MCAD and EEOC investigations are closed and this is the only active forum.

### C.      Counts Two and Three State Plausible Claims for Employment Discrimination

The Counterclaim Defendants assert that Count Two fails to state an actionable Title VII or c. 151B claim because Legassa also alleges a non-discriminatory purpose for his firing - that he was wrongfully terminated in violation of public policy and to deprive him of the reasonable expectations of the full financial benefit of his employment relationship. *See* Memorandum in Support of Motion to Dismiss at 10. The short answer to that assertion is that Fed. R. Civ. P. 8 expressly permits pleading inconsistent claims or defenses: "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3).

The Counterclaim Defendants also assert that Count Two fails to connect Legassa's Latino race with his firing. *See* Memorandum in Support of Motion to Dismiss at 9-10. Legassa has adequately made that connection.

The Counterclaim sets forth that Legassa is Latino and, as such, is a member of a protected class. The environment at NESN was uncomfortable for Latinos and other non-white employees because McGrail and Guilbault created and perpetuated a hostile environment. Both told racially inappropriate jokes. Both refused to promote an African American employee that Legassa and two other Vice Presidents collectively pushed hard for. Guilbault told Legassa that the African American Employee was not one of us, which Legassa understood to mean he was not white. McGrail perpetuated the "not one of us" theme by regularly contrasting the way Latino persons would do things from the way "we" do things at NESN. The atmosphere at NESN was so racially insensitive that a law firm was brought in to investigate and multiple

consultants were retained to conduct comprehensive sensitivity training. *See* Counterclaim at ¶¶ 38-47.

Against this backdrop, Legassa specifically pleads that the Counterclaim Defendants, "acting in concert, terminated Legassa's employment based upon his membership in a protected class, specifically, his race," and that they "violated Legassa's constitutional rights by terminating him because of his membership in a protected class, specifically, his race. *Id*. at ¶¶ 57-58. Count Two does not just allege that Legassa was fired, or that he was fired unfairly. It specifically states that Legassa was fired *because of his race*. He is required to plead nothing more than that at this stage of this case. *See* Section 1, above; *Soni*, 239 F. Supp. 3d at 385 ("[a]t this stage, the requirements for adequately pleading the discriminatory motivation element are modest. [Plaintiff] need only plead sufficient facts to make it plausible that [employer] acted with discriminatory animus").

The Counterclaim Defendants also assert that the c. 151B claim must be dismissed because Legassa has failed to establish that the Counterclaim Defendants intentionally discriminated against him (he has, see preceding paragraphs) and that they would not have fired him but for unlawful discrimination. They rely for this proposition solely on a summary judgment case which holds that "but for" causation is part of a plaintiff's *prima facie* c. 151B case. *See* Memorandum in Support of Motion to Dismiss at 10, quoting *McKenzie v. Brigham & Women's Hospital*, 541 N.E.2d 325, 327 (Mass. 1989).

The *prima facie* standard does not apply at the pleading stage, it is "an evidentiary model, not a pleading standard … [it] is not the appropriate benchmark for determining whether a

complaint has crossed the plausibility threshold." *Rodríguez-Reyes*, 711 F.3d at 51(vacating dismissal for failure to state a claim and remanding).

The Counterclaim Defendants assert that the Count Three hostile workplace environment claims also fail to state a claim because they are based on general and speculative allegations that do not involve Legassa, and are pled on information and belief or on offensive jokes Legassa attributes to McGrail and Guilbault. *See* Memorandum in Support of Motion to Dismiss at 11. To the contrary, Legassa's claims are specific, are based on personal knowledge, and are sufficient to plead a plausible hostile workplace claim. He does not simply attribute racial jokes to McGrail and Guilbault, he heard the jokes. On a regular basis. *See* Counterclaim at ¶ 39-40. He heard Guilbault say that the African American employee would not be promoted because he was not one of us, and he repeatedly heard McGrail say that Latinos do not do things the way we do. *Id*. at 42, 46. The only thing pleaded on information and belief is that the results of the law firm investigation into the racist atmosphere at NESN uncovered other instances of inappropriate treatment of members of protected classes and a general discomfort among members of those classes. *Id*. at ¶ 43. That information is, of course, in NESN's exclusive control and will be sought through discovery.

The *Posada* case, on which the Counterclaim Defendants rely, actually supports denial of the motion to dismiss Legassa's hostile work environment claim. Judge Gorton noted that "the initial burden of demonstrating a claim of discrimination is not intended to be onerous and the plaintiff need not establish every element of the *prima facie* case at the pleading stage." *Posada*, 389 F. Supp. 3d at 158. Acknowledging that the plaintiff's complaint provided few details of

precisely how she was impacted, Judge Gorton explained that "facts in support of her claims of discrimination may be developed later through discovery." *Id*. at 159.

Here, Legassa has provided details of how the Counterclaims Defendants created and perpetuated a hostile work environment and how it affected Legassa. He is entitled to further support his plausible claims through discovery.

### 4.  Count Four States a Valid Claim for Abuse of Process

####    A.  The Court Should Deny the Special Motion to Dismiss Count Four Pursuant to M.G.L. c. 231, § 59H

NESN asserts that Count Four, alleging abuse of process, should be dismissed pursuant to its special motion filed under the Massachusetts Anti-SLAPP statute, M.G.L. c. 231, § 59H. The court should deny the special motion because the abuse of process claim Legassa has brought here is not a SLAPP suit and is not subject to expedient dismissal under the burden-shifting procedure set forth in that statute.

A SLAPP suit is one "brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances." *Blanchard v. Steward Carney Hosp., Inc.*, 477 Mass. 141, 147 (Mass. 2017) ("*Blanchard I*") (citation omitted). The "typical mischief" the legislature targeted was "lawsuits directed at individual citizens of modest means for speaking publicly against development projects." *Duracraft Corp. v. Holmes Products Corp.*, 427 Mass. 156, 161 (Mass. 1998) (citation omitted). SLAPP suits are "generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Id*. (citation omitted). A SLAPP suit "target[s] people for 'reporting violations of law, writing to government officials, attending public hearings, testifying

before government bodies, circulating petitions for signature, lobbying for legislation, campaigning in initiative or referendum elections, filing agency protests or appeals, being parties in law-reform lawsuits, and engaging in peaceful boycotts and demonstrations.'" *Id*. at 161-162 (citation omitted). The objective of the movant is not to win, "but to use litigation to intimidate opponents' exercise of rights of petitioning and speech. *Id*. (citation omitted). *Id*. at 161.

Outside of that paradigm, "'identifying SLAPPs, which typically appear as ordinary lawsuits, presents difficulties.'" *Id*. at 162 (citation omitted). The Supreme Judicial Court has criticized the statute for sweeping too broadly in cases where "the classic indicia of a 'SLAPP' suit … appear to be absent" noting that "the present [statutory] framework does not provide adequate means to distinguish between meritless claims targeting legitimate petitioning activity and meritorious claims with no such goal" *Blanchard I*, 477 Mass. at 156-157 (citation and footnote omitted).

The SJC also has questioned whether the anti-SLAPP statute should even apply in ordinary commercial litigation: "[w]e also see no evidence that the statute was intended to reach suits such as this one between two corporate competitors involved in other ongoing litigation, where the special motion may have been deployed not to limit 'strategic litigation,' but as an additional litigation tactic." *Duracraft*, 427 Mass. at 163. *See also Blanchard I*, 477 Mass. at 157 ("[t]he Legislature did not intend [the statute] to be used instead as a cudgel to forestall and chill the legitimate claims - also petitioning activity - of those who may truly be aggrieved by the sometimes collateral damage wrought by another's valid petitioning activity").

Moreover, it has not been firmly established that the Massachusetts Anti-SLAPP statute applies to a state-law claim in a federal diversity action. Courts in this district historically have held that M.G.L. c. 231, § 59H is procedural, not substantive, and that motions to dismiss and motions for summary judgment must be determined by applying Rules 12 and 56 of the Federal Rules, not the special motion procedure set forth in the statute. *See*, *e.g.*, *Stuborn Ltd. P'ship v. Bernstein*, 245 F. Supp. 2d 312, 316 (D. Mass. 2003); *Baker v. Coxe*, 940 F. Supp. 409, 417 (D. Mass. 1996); *South Middlesex Opportunity Council, Inc. v. Town of Framingham*, Civ. No. 07-12018, 2008 WL 4595369, at *8-11 (D. Mass. Sept. 30, 2008). Although the First Circuit Court of Appeals has held that Maine's version of an anti-SLAPP statute is substantive and may be applied to state law claims in a federal suit, that court has never ruled that the same is true for M.G.L. c. 231, § 59H. *See Godin v. Schencks*, 629 F.3d 79 (1st Cir. 2010).  The court should adopt the historic rationale prior to *Godin* and should hold that the Anti-SLAPP statute does not apply to state court claims in diversity actions brought in federal court.

Nor has the First Circuit considered whether the burden shifting procedure set forth in the Massachusetts statute infringes the non-movant's constitutional rights to Due Process under the Fifth Amendment and to have all fact issues determined by a jury under the Seventh Amendment to the United States Constitution.[1]

The problem with the Anti-SLAPP statute is that, as written, it "leaves open the possibility that a special movant, whose legitimate petitioning activity forms the basis of a

---

[1]    The Seventh Amendment provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any court of the United States, than according to the rules of the common law. US Const., Amend. VII.

meritorious adverse claim that is not primarily geared toward chilling such petitioning, may nonetheless use the special motion to eradicate that nonmoving party's adverse claim" *Blanchard I*, 477 Mass. at 157. *See also Duracraft*, 427 Mass. at 166-67 ("by protecting one party's exercise of its right of petition, unless it can be shown to be sham petitioning, the statute impinges on the adverse party's exercise of its right to petition, even when it is not engaged in sham petitioning. This conundrum is what has troubled judges and bedeviled the statute's application") (footnote omitted).

Against this backdrop, a court should tread lightly when a sophisticated party with vast resources like NESN brings a lawsuit against an individual, aggressively strips the individual of the financial means to fight the lawsuit properly, brings a baseless claim against the individuals's spouse, and then invokes a remedy intended to protect individuals from that very conduct when the individual fights back by bringing a legitimate claim in response. NESN's special motion here is far afield from what the SJC and the legislature have identified as the intended purpose behind the Anti-SLAPP statute.

Should the court determine that the special motion to dismiss is properly brought, the court should deny it on the merits. To prevail, NESN must demonstrate that Legassa's abuse of process counterclaim is "solely based on" NESN's exercise of its petition rights. *See Blanchard I*, 477 Mass. at 159. Upon that showing, the burden shifts to Legassa to demonstrate either: that NESN's "exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law" and caused injury to Legassa; or Legassa's abuse of process counterclaim is "colorable" and "was not 'brought primarily to chill' [NESN's] legitimate exercise of its right to petition,' i.e., that it was not retaliatory." *Blanchard v. Steward Carney Hosp.*, 483 Mass. 200,

204 (Mass. 2019) (*Blanchard II*) (citations omitted). *See also Amherst Cmty. Television, Inc. v. Guidera*, 178 N.E.2d 902 (Mass. App. Ct. 2021) (applying two-part second-stage analysis and denying special motion to dismiss abuse of process and malicious prosecution counterclaims that were colorable and not brought primarily to chill movant's exercise of its petition rights).

Legassa's abuse of process counterclaim claim survives under both of the stage two tests. Under the first test, Legassa has shown that NESN's claims for fraud, conversion and fraudulent transfer are devoid of reasonable factual support because NESN was not defrauded by Legassa. NESN knew, through its CEO McGrail and CFO/COO Guilbault, that Alley Interactive CT was controlled by Legassa, agreed with Legassa to make payments pursuant to that arrangement, and knew and agreed that the payments would go to Legassa for the development of NESN's DTC technology. Counterclaim at ¶¶ 25-29, 35. NESN, through McGrail and Guilbault, entered into the arrangement with Legassa because that was the only way a Spring 2022 launch of NESN's DTC technology could have been achieved. *Id*. at ¶¶ 20-24.

Legassa Also has shown that he was harmed by NESN's filing of baseless fraud, conversion, and fraudulent transfer claims and by the actions NESN has taken since filing those claims, including: obtaining attachments on a joint bank account and a second bank account solely in his wife's name; freezing assets necessary to provide for the Legassa household of six; adding his wife to a baseless fraudulent transfer claim; refusing to dissolve the attachments; on information and belief, causing its lawsuit to be published widely in the media; and providing false information to the United States Attorney's Office, which resulted in criminal charges for alleged fraudulent conduct, of which NESN was well aware and had approved. The harm to Legassa includes the inability to adequately provide financially for his family, the inability to

find suitable employment commensurate with his skills, talent, and experience, damage to his reputation, the concomitant stress on his relationship with his wife, and his own emotional distress. *See* Affidavit of Ariel Legassa In Support Of Response to Counterclaim Defendants' Motion To Dismiss Defendant Ariel Legassa's Counterclaims and Special Motion To Dismiss Defendant Legassa's Abuse Of Process Counterclaim Under M.G.L. c. 231 § 59H ("Legassa Aff.") at ¶¶ 1-4.

Legassa's abuse of process counterclaim also survives under the second stage two test because it is patently colorable and the totality of the circumstances demonstrate that the claim was not brought primarily to chill any right of NESN to petition. *See Amherst Cmty. Television*, *supra*, (finding abuse of process and malicious prosecution counterclaims colorable and remanding for determination of whether non-movant's primary goal was to interfere with movant's petition rights).

The "colorable claim" showing is not difficult to make. A claim is colorable if it "'offers some reasonable possibility' of a decision in the party's favor." *Blanchard II*, 483 Mass. at 208 (citation omitted). It is "a 'lighter, less technical burden' of presenting a claim where threshold considerations are implicated, … at a stage in the litigation when discovery typically has not yet occurred. It properly balances the parties' respective rights with the Legislature's purpose in expediting dismissal of 'meritless' SLAPP suits." *Id*. (citations omitted).

Legassa's abuse of process claim is patently colorable under this standard. The Counterclaim as a whole sets forth facts that NESN brought its fraud, conversion, and fraudulent conveyance claims for the ulterior purpose of wrongfully depriving Legassa of the opportunity to

profit from the development of the DTC and white label technologies that were entirely dependent upon the his ideas, vendor relationships, vision, and efforts. *Id*. at ¶¶ 36-37.

Legassa has also shown that he did not bring the abuse of process claim primarily for the retaliatory purpose of chilling NESN's legitimate exercise of its petition rights. Legassa's primary reason for bringing the abuse of process claim was to seek damages for all harm caused by NESN's baseless lawsuit. *See* Legassa Aff. at ¶¶ 1-4. *See Blanchard II*, 483 Mass. at 206 ("[i]f the judge determines that the nonmoving party's claim "was not primarily brought to chill the special movant's … legitimate petitioning activities," but instead was brought to seek redress for harm caused by the moving party's … conduct, then the anti-SLAPP motion to dismiss the nonmoving party's … claim properly is denied") (citation omitted), *See also Amherst Cmty. Television*, *supra* (same).

The court is required to evaluate Legassa's primary motivation for bringing the abuse of process claim by considering the totality of circumstances. *See Blanchard II*, 483 Mass. at 205 ("[t]he judge's task with regard to the second path is to assess the 'totality of the circumstances pertinent to the nonmoving party's asserted primary purpose in bringing its claim,' and to determine whether the nonmoving party's claim constitutes a SLAPP suit"). Factors the court may consider include, first and foremost, "[w]hether the case presents as a 'classic' or 'typical' SLAPP suit, i.e., whether it is a lawsuit [ ] directed at individual citizens of modest means for speaking publicly against development projects.'" *Id*. at 206 (brackets in original). For the reasons set forth above, NESN's lawsuit is as far beyond the wheelhouse of a classic or typical SLAPP suit as it could be. This factor weighs against a finding that Legassa' primary motivation was to chill NESN.

Other factors identified in *Blanchard II* also favor the conclusion that Legassa's primary motivation was not to chill NESN. Those factors include "whether the lawsuit was commenced close in time to the petitioning activity; whether the anti-SLAPP motion was filed promptly; the centrality of the challenged claim in the context of the litigation as a whole, and the relative strength of the nonmoving party's claim; evidence that the petitioning activity was chilled; and whether the damages requested by the nonmoving party, such as attorney's fees associated with an abuse of process claim, themselves burden the moving party's exercise of the right to petition." *Id*. at 206-207.

Legassa had no control over the timing and circumstances of filing the abuse of process counterclaim. NESN sued him. It is a compulsory counterclaim. *See Carteret Sav. Loan Ass'n v. Jackson*, 812 F2.d 36, 38-39 (1st Cir. 1987) (affirming dismissal of counterclaims including an abuse of process claim because they were not asserted as compulsory counterclaims). It had to be brought when Legassa brought it. For that reasons, the timing factor favors Legassa, or is at least neutral.

The centrality of the abuse of process claim and its strength favor Legassa. The abuse of process counterclaim is one of several claims Legassa has asserted, all of which rest on the same alleged facts. All of Legassa's claims seek damages for the harm the Counterclaim Defendants have caused by disavowing the payment arrangement with Legassa for development of DTC technology and bringing baseless claims that NESN was defrauded. For the reasons set forth herein, all of Legassa's claims have merit and should not be dismissed.

There is no evidence that Legassa's abuse of process counterclaim has chilled NESN's petitioning activity. NESN has not gone away. It continues to aggressively seek everything to

which it believes it is entitled. The potential for an award of attorneys fees is not likely to burden NESN as it continues to aggressively exercise its right to petition.

For all of those reasons, the totality of the circumstances amply support that Legassa's stated purpose in bringing the abuse of process claim is the same as the purpose for bringing the other counterclaims - to recover all damages for all harm that has resulted from NESN's revisionist claims that it was defrauded by Legassa and did not know in advance and approve of the payment arrangement for the development of DTC technology. Legassa has demonstrated that his abuse of process claim is not a SLAPP suit and should not be dismissed pursuant to NESN's special motion.

### B.     The Court Should Deny the Rule 12 Motion to Dismiss Count Four

NESN also asserts that the abuse of process claim should be dismissed because it pleads no facts to support the elements of that claim. *See* Memorandum in Support of Motion to Dismiss at 15-16. NESN specifically complains that Legassa has not alleged the improper ulterior motive NESN had for filing its lawsuit and why it did so. *Id*. at 16. NESN is wrong.

As described in the preceding section and in Section 1 above, the Counterclaim sets forth an actionable abuse of process claim and, in particular, an ulterior motive. As a whole, it plausibly alleges that Legassa was fired in bad faith for the purposes of depriving him of an identifiable, future financial benefit reflective of his efforts to develop DTC streaming capability. *Id*. at ¶¶ 34, 36-37, and 48-51. Given the enormous potential value of a white label DTC technology, Legassa reasonably believed that as the driving force behind the technology, he would have received a direct financial benefit. *Id*. at ¶¶ 30-33. Instead, NESN terminated

Legassa with the intent to deny his reasonable expectations of the full financial benefit of his employment relationship and to retain that benefit for itself.

5. **Counts Five and Six State Valid Claims for Negligent and Intentional Infliction of Emotional Distress**

The Counterclaim Defendants assert that Count Five and Six, alleging negligent infliction of emotional distress and intentional infliction of emotion distress respectively, are preempted by the Massachusetts worker's compensation statute. *See* Memorandum In Support of Motion to Dismiss at 12.

A claim for intentional infliction of emotional distress brought against an individual employee is not preempted. *See Ruffino*, 908 F. Supp. at 1049 ( denying motion to dismiss workplace intentional infliction of emotional distress claim, holding "[w]hile some claims are statutorily barred, some actions in tort will lie where the employee 'commits an intentional tort which was in no way within the scope of employment furthering the interests of the employer'"). *See also O'Connell v. Chasdi*, 400 Mass. 686, 690 (Mass. 1987) (citation omitted) (reversing judgment notwithstanding verdict on intentional infliction of emotional distress claims, holding "[w]here a fellow employee commits an intentional tort not related to the interests of the employer, on the other hand, the policies behind the [workers' compensation] act would not be served by immunizing the coemployee").

Here, Legassa has asserted and has properly pleaded plausible intentional infliction of emotional distress claims against McGrail and Guilbault that are not preempted. They should not be dismissed.

**Conclusion**

For all of the reasons set forth above, the court should deny both the motion and the special motion to dismiss in their entirety.

ARIEL LEGASSA,
 By his attorney,

/s/ *E. Peter Parker*
E. Peter Parker
 B.B.O. #552720
Law Office of E. Peter Parker
The Wheelhouse at Bradford Mill
Concord, MA  01742
(617) 742-9099
peter@parkerslaw.com

Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 25, 2022.

/s/ *E. Peter Parker*
E. Peter Parker