UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND SPORTS NETWORK, L.P.,<br><br>    Plaintiff,<br><br>  v.<br><br>ALLEY INTERACTIVE LLC (CT), NILDA LEGASSA,<br><br>    Defendants, and<br><br>ARIEL LEGASSA,<br><br>    Defendant and Counterclaim Plaintiff,<br><br>  v.<br><br>NEW ENGLAND SPORTS NETWORK, L.P., SEAN McGRAIL, RAY GUILBAULT,<br><br>    Counterclaim Defendants. | Civil Action No. 22-CV-10024-ADB |

**COUNTERCLAIM DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS**

On February 17, 2022, a Grand Jury indicted Legassa on seven counts of mail fraud and three counts of money laundering. Since then, the FBI unearthed evidence that Legassa paid more than $35,000 to credit cards in his wife's name, paid off loans on several cars (two of which the DOJ seized) and an airplane (which DOJ likewise seized), and transferred tens of thousands of dollars into personal accounts held in his name, his wife's name, or both. Rather than admit fault, hardly a close question, Legassa lodged utterly senseless and insupportable counterclaims. His counterclaims—and the press releases his counsel issues—are a transparent effort to sling mud at his former employer before his criminal matter can proceed to trial in

1

circumvention of L.R. 83.2.1.[1]

When NESN moved to dismiss those counterclaims, both because they were unsustainable as a matter of law and because the threadbare accusations on which they are based do not meet even the minimum pleading requirements, Legassa doubled down—inventing a scheme that he claims would have allowed him to benefit personally from work he did for NESN and twisting the cases on which he relies beyond recognition.

NESN submits this brief Reply to address these unexpected and unsustainable arguments.

## ARGUMENT

1. **Legassa's claimed "facts" are not credible.** In assessing Legassa's arguments, the Court need not, as his Opposition suggests, credit every wild accusation, but it must separate factual allegations from legal conclusions and determine whether the factual allegations plausibly state a claim. *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011). Plausibility requires the Court to draw on its own experience and common sense, *Ashcroft v. Iqbal*, 556 U.S. 662, 670 (2009), and the Court should not credit "bald assertions, unsupportable conclusions, and opprobrious epithets." *Campagna v. Mass. Dep't of Env't. Prot.*, 334 F.3d 150, 155 (1st Cir. 2003) (quoting *Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 16 (1st Cir. 1989)). In this case, common sense demands dismissal.

2. **Wrongful Termination requires more than a mere hope of profit.** Legassa asks this Court to sustain his wrongful termination claim (Count One) based on cases that uphold such claims when an employee is fired to deprive him of compensation. Those cases have no application here. Legassa had no right to profit from technology he was paid to create, and does

---

[1] *E.g.,* Press Release, Law Office of E. Peter Parker, *Ariel Legassa Fights Back Against NESN Fraud Allegations In Pleading By Law Office Of E Peter Parker* (Feb. 23, 2022), https://www.prnewswire.com/news-releases/ariel-legassa-fights-back-against-nesn-fraud-allegations-in-pleading-by-law-office-of-e-peter-parker-301489218.html.

not even plead that he does. He also pleads no "well-defined" or "clearly established" public policy exception to the general rule that Legassa could be terminated at will (because none exists), requiring dismissal of his wrongful termination action. *Kun v. KinderCare Educ. LLC*, 258 F. Supp. 3d 221, 226 (D. Mass. 2017) (citations omitted).

3. **There is no case against Messrs. McGrail and Guilbault.** The Court *must* dismiss Legassa's Title VII claims (Counts Two and Three) against McGrail and Guilbault under established First Circuit precedent confirming there is no individual liability under Title VII—a legal truth that Legassa concedes in his Opposition. *See Fantini v. Salem State Coll.*, 557 F.3d 22, 29–31 (1st Cir. 2009).

4. **Exhaustion of remedies is not optional.** Legassa cannot escape the administrative exhaustion requirement on these same claims simply by asserting that his counterclaims are compulsory or by filing his administrative complaints *after* asserting his counterclaims before the Court. "The employee may commence a civil action against her employer if, and only if, the EEOC has dismissed the administrative complaint or has itself failed to begin a civil action within 180 days of the original EEOC filing." *Jorge v. Rumsfeld*, 404 F. 3d 556, 564 (1st Cir. 2005) (emphasis added).

5. **Vague claims of discrimination against others are irrelevant.** Apart from Legassa's failure to exhaust his administrative remedies, Legassa pleads no employment discrimination involving him. He vaguely describes acts he believes were discrimination against *other* employees, but he outright fails to connect these allegations to his termination for stealing over $500,000 from his employer. These are exactly the kind of nonsense allegations the Court is free to ignore. *Campagna v. Mass. Dep't of Env't. Prot.*, 334 F.3d 150, 155. Legassa was fired because he embezzled hundreds of thousands of dollars from NESN, and the Department of

Justice has since indicted him for this fraud. And even crediting Legassa's implied denial of those actions, the fact that NESN believed (as did a Grand Jury) them was eminently reason to fire him. Legassa only raised his employment discrimination allegations after his fraud was uncovered.

6. **Legassa's work environment was not hostile until his fraud was exposed.** Legassa's hostile work environment counterclaims similarly fall short because he does not plead facts that are legally sufficient to sustain his claims. Legassa relies exclusively on a *Posada*, a case whose facts are nothing like Legassa's fantastic allegations here. There, the plaintiff alleged a pattern of inappropriate behavior, including threatening and intimidating conduct by another employee, sexist and dismissive comments made by her supervisor when she reported such threats, and disparate and unreasonable work assignments given to her. *Posada v. ACP Facility Servs.*, 389 F. Supp. 3d 149, 159-60 (D. Mass. 2019). Legassa claims no such treatment; he merely alleges that he "never really felt like he belonged" at NESN. Def.'s Countercl. to Pl.'s First Amend. Compl. ¶ 45. His hostile work environment counterclaims should therefore be dismissed.

7. **The anti-SLAPP statute demands dismissal and an award of fees.** Legassa's Abuse of Process Counterclaim (Count Four) is a textbook SLAPP suit that must be dismissed. Legassa's claim that the anti-SLAPP statute does not apply in federal court is frivolous. In *Steinmetz v. Coyle & Caron, Inc.*, the First Circuit made clear that it would order dismissal of certain claims under the statute if it applied to third-party contractors (a question it certified to the SJC). 862 F.3d 128 (1st Cir. 2017) ("If the SJC concludes that third-party contractors in like position to Coyle & Caron fall within the scope of the anti SLAPP statute, then Coyle & Caron's special motion must be granted as to the negligence, gross negligence, and chapter 93A claims,

for the reasons stated above.");[2] *see also Godin v. Schenks*, 629 F.3d 79, 92 (1st Cir. 2010) (applying substantially similar Maine anti-SLAPP statute).  The Abuse of Process claim is indisputably based solely on petition activity.  *477 Harrison Ave., LLC v. JACE Boston, LLC*, 134 N.E.3d 91, 99 (Mass. 2019) ("[c]ommencement of litigation is quintessential petitioning activity.")  The burden therefore shifts to Legassa to show that NESN's suit is patently frivolous, something it would be impossible to do in these circumstances and something he has not even attempted in his opposition to the motion to dismiss.  *See Blanchard v. Steward Carney Hosp., Inc.*, 130 N.E.3d 1242, 1248–49 (Mass. 2019) (discussing the burden-shifting framework). When this count is dismissed, the Court must award NESN its reasonable attorneys' fees.  Mass. Gen. Laws ch. 231 s. 59H ("If the court grants such special motion to dismiss, the court *shall* award the moving party costs and reasonable attorney's fees, including those incurred for the special motion and any related discovery matters.") (emphasis supplied).

8. **This suit is a legitimate effort to recoup NESN's losses.**  Legassa alleges no "ulterior motive" for NESN's suit, as required to sustain his claim because NESN's true motive—to recover the money he stole—is obvious from the face of the Complaint and the indictment.  *See Humphrey v. Comoletti*, 2017 WL 1224539, at *4 (D. Mass. Mar. 31, 2017) ("the gravamen of an abuse of process claim is whether the defendant had an ulterior motive."). On the contrary, he affirmatively pleads that NESN brought the suit after uncovering his fraud. All he offers is a threadbare claim that NESN "seeks an ulterior or illegitimate purpose, which has caused Legassa to sustain damages," which is far thin a reed to sustain his action.

9. **Any emotional distress Legassa suffered was because of his own conduct, and is preempted.**  Legassa's counterclaims for intentional and negligent infliction of emotional

---

[2] The case settled before the SJC could respond to the certified question.

distress (Counts Five and Six) are squarely preempted by the Massachusetts Worker's Compensation Act.  Legassa's bald allegation that "all of the conduct described in [Legassa's] Counterclaim" supports these claims is insufficient to allege conduct that "rises to the exceptionally high standard required to qualify as extreme and outrageous."  *Soni v. Wespiser*, 239 F. Supp. 3d 373, 390 (D. Mass. 2017).  Legassa fails to even to plead the most basic elements of negligence, confirming that the Counterclaim is really a *countermeasure* intended to inflict further harm on NESN than he achieved with his criminal enterprise and prejudice the jury pool in his criminal action.

## CONCLUSION

For the foregoing reasons, NESN, McGrail, and Guilbault respectfully request that the Court dismiss Ariel Legassa's counterclaims with prejudice and award them reasonable attorneys' fees in connection with their Special Motion to Dismiss.

Dated: May 12, 2022

Respectfully Submitted,

NEW ENGLAND SPORTS NETWORK, L.P., SEAN MCGRAIL, AND RAYMOND GUILBAULT,

By Their Attorneys,

*/s/ Christopher M. Morrison*
Christopher M. Morrison (BBO # 651335)
cmorrison@jonesday.com
Jacob E. Morse (BBO # 709512)
jacobmorse@jonesday.com
JONES DAY
100 High Street, 21st Floor
Boston, MA  02110.1781
Telephone:    +1.617.960.3939
Facsimile:     +1.617.449.6999

## **CERTIFICATE OF SERVICE**

The undersigned certifies that, on May 12, 2022, the foregoing was filed through the Court's ECF system and will be sent electronically to the registered participants.

                                        */s/ Christopher M. Morrison*
                                        Christopher M. Morrison